## Childs *versus* Napheys.

1. Under the Act of May 20th, 1857, P. L., 590, in relation to party walls, the decision of the building inspectors as to the sufficiency of said walls is a finality, from which no appeal lies to the Common Pleas. If adjudged by said inspectors to be insufficient the wall shall be taken down by the last builder, and for so doing no order of the Common Pleas is provided for, nor is one necessary.

2. If the last builder is interfered with in taking down a condemned party wall, the Common Pleas may, by virtue of its equitable powers, restrain such interference in a summary way by an order or an injunction; or if such interference amounts to a breach of the peace the offending parties may be bound over to keep the peace.

April 5th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to the Court of Common Pleas, No. 4, of *Philadelphia county:* Of January Term, 1866, No. 50.

The record showed the following:

On September 23d, 1885, the said Edward C. Napheys presented to the court below a petition, alleging, *inter alia*, that on the south end of the west side of said 309 Cypress street was a wall, which had been condemned by the building inspectors as being a party wall insufficient for the building about to be erected by the petitioner. That notice had been given to respondent, George K. Childs, on September 19th, 1885, and praying that the court order and direct the respondent to take down said wall, or permit the petitioner and his agents and contractors to enter upon said land, No. 309 Cypress street, and take down and remove said wall, and that the said Childs had taken no appeal from said condemnation.

On September 24th, 1885, George K. Childs, the respondent, filed an answer to said petition stating, *inter alia*, that the whole of said brick wall is erected upon land occupied by respondent.

That the adjoining premises on the west were lately known as the "Scots' Presbyterian Church," and were lately sold and conveyed to the petitioner as your respondent is informed, at which sale and conveyance it was expressly stipulated by the trustees of said church that they could give no title to, nor make any conveyance of, said brick wall, and that their title extended only to and as far as the said wall and no further; that the said petitioner accepted the said property subject to such line as set forth to them by said trustees.

That the respondent admits that no appeal has been taken up to the time of filing this answer, but avers that the time

[Childs v. Napheys.]

for taking an appeal to the Court of Common Pleas, as allowed by law, has not elapsed, and that the prayer of said petition is premature and should be dismissed. That the said wall is perfectly safe, and capable of sustaining the building placed upon it. All of which facts the respondent avers he is ready to verify.

The court upon that date immediately heard the cause upon petition and answer, and make the following decree:

And now, to wit, September 24th, 1885, on motion of E. C. Mitchell, Esq., attorney for petitioner, it is ordered and decreed that the said petitioner, Edward C. Napheys (who is the last builder), do remove and take down the party or division wall which has been condemned as set forth in the said petition; the cost and expense of the new wall to be erected in lieu thereof shall be borne and paid exclusively by the said petitioner, Edward C. Napheys.

George K. Childs thereupon took this writ and filed the following assignments of error:

*First.* The court below erred in entertaining the petition, because:

1. No affidavit of the facts had first been filed by the building inspectors setting forth the said violation particularly.

2. Because the petitioner, George C. Napheys, was not the proper person to prosecute said suit.

*Second.* The court below erred in entering the decree and not dismissing the petition. Because:

1. No affidavit of the facts had first been filed by the building inspector setting forth the violation particularly.

2. The facts necessary to give the court jurisdiction were in dispute.

3. There was no proof of the allegations of fact in the petition which were denied in the answer.

4. The court should have referred the case to an examiner for proof, or sent the same to a jury to try the disputed questions of fact.

5. The petition, answer and decree are in the nature of an ejectment bill.

*Third.* The court below erred in finding that said wall is a party wall. Because:

1. The facts set forth in the answer are uncontradicted, and show the whole wall is erected upon the land of the respondent, and that the petitioner's title extended only to and as far as said wall.

2. The fact was shown that petitioner purchased subject to the line of said wall with full knowledge.

*Fourth.* The court below erred in entering the decree of September 24th, 1885, because the time for taking an appeal

to the Court of Common Pleas, as allowed by law, had not elapsed.

*J. Howard Morrison* and *Henry B. Freeman,* for plaintiff in error.—1. There was no authority in the plaintiff to bring an action of this kind.

It should have been as is usual and as the Act seems to point out, in the name of the building inspectors and the city.

All the proceedings up to the application to the court are by the inspector. He must give notice, inspect, file the affidavit and therefore it seems reasonable to conclude that he, having every detail to attend to, and it being his duty to enforce the law of party walls, is the party who should apply, not the adjoining owner whom the Act explicitly states must apply himself to the building inspector in order that he (the inspector), shall proceed.

2. The petition is shown by the answer to be an attempt to obtain possession of a wall, built entirely upon respondent's land, by calling it a party wall, and then by rebuilding obtain possession of land, space which is in dispute as to the ownership. The principle is well settled that the court of equity has no jurisdiction to determine a mere question of legal title: Penna. Coal Co. *v.* Snowden, 42 Penna. St., 488; Bently *v.* Kenyon, 2 Luz., 4 Obs., 316.

A court of equity has no jurisdiction of a question of disputed boundary where the parties hold legal estates: Norris' Appeal, 64 Penna., 275; Kennedy's Appeal, 32 Sm., 163; Messimer's Appeal, 92 Penna., 158; Long's Appeal, 92 Penna., 171; Barclay's Appeal, 93 Penna., 50.

A similar case to the one here was that of Tilmes *v.* Marsh, 17 P. F. S., 507, which decides that ejectment is the proper remedy to recover possession of the soil subject to either a private or public easement, and that an equitable remedy by bill will not lie.

3. It will be seen upon looking at the various Acts of Assembly in relation to party walls, that they are dependent upon one another, and taken together form a system which requires and embraces the provisions of all to make it stand. By the Act of 1782 an appeal from the then regulators (whose duties are now exercised by the building inspectors) was given to the Court of Common Pleas. This provision has never been expressly repealed, and as no enactment inconsistent with this right of appeal has ever been passed, it certainly has not been by implication.

If two statutes can stand together there is no repeal by implication: Erie *v.* Bootz, 22 P. F. S., 196; Barber's Appeal, 5

Norris, 392: Sifred v. Comm., 15 W. N. C., 373; Homen v. Comm., Id., 337.

J. C. Stellwell and E. C. Mitchell, for defendant in error.— The proceeding was based on the 1st section of the Act of 20th May, 1857, P. L., 590, Purdon, 1307, pl. 27.

This legislation recognizes the fact, which was fully illustrated in this case, that a builder, engaged in work which will greatly suffer by enforced delay, should have any dispute as to his rights speedily and summarily determined by a competent tribunal. And to avoid efforts to embarrass him by those who are not really injured by his course of proceeding, but who want to be paid to let him alone, the building inspectors are required " to examine all party or division walls upon or adjoining said lot of ground, and condemn them if judged insufficient."

The appeal which is given by the Act is to be had " to the Board of Surveyors, in conformity with the provisions of an Act entitled ' An Act to provide for the better regulation of buildings in the City of Philadelphia,' approved May 7th, Anno Domini 1855."

There is a clerical error in the date of the statute giving the appeal. That Act was not approved May 7th, 1855. The Act of May 7th, 1855, gives no appeal whatever. The Act bearing the title mentioned was approved 11th April, 1856, and the fourth section thereof giving the appeal referred to is in these words (P. L., 319, Purdon, 1306, pl. 26) :—

The court considered the question and decided that the date of May 7th, 1855, was a mistake, and was intended for 11th April, 1856, and that Childs was entitled to an appeal within three days to the board of surveys, who were required speedily to decide the matter.

Attention is called to the concluding words of the fourth section of the Act of 11 April, 1856, directing that an unwilling owner may be compelled to comply with the decision " in the manner provided in the Act to which this is a supplement." This Act is the Act of 7th May, 1855, which, section 10, gives power to the Court of Common Pleas to order so much of the condemned building to be removed as may be decreed by the court: (P. L., 1855, 466, Purd., 1305, pl. 18.)

Mr. Justice PAXSON delivered the opinion of the court, May 10th, 1886.

The wall of the plaintiff in error was condemned as insufficient by the building inspectors under the Act of the 20th of May, 1857, P. L., 590, entitled " An Act in relation to party walls." Said Act is as follows: " That it shall be the duty of

the inspectors of buildings of the city of Philadelphia, upon the application of any person or persons about to erect on his or their lot or lots of ground any new building or buildings, according to the provisions of the Act of the first of May, A. D. 1855, entitled 'An Act to provide for the regulation and inspection of buildings,' to examine all such party or division walls upon or adjoining said lot of ground, and which shall have been erected prior thereto, and if deemed and adjudged by them to be insufficient and unfit for the purpose of such new building about to be erected, such party or division walls shall be removed and taken down by the last builder; the cost and expense of which removal, together with the cost and expense of the new wall or walls to be erected in lieu thereof, shall be borne and paid exclusively by him : *Provided, however,* That an appeal from the decision of the building inspectors may be had to the board of surveyors, in conformity with the provisions of an Act entitled 'An Act to provide for the better regulation of buildings in the city of Philidelphia,' approved May 7th, A. D. 1855," &c.

In Evans & Watson *v.* Jayne, 23 Penn. St. Rep. 34, it was said by this Court that " There can be no available objection to the principle upon which our law as to party walls is based. The law as to partition fences involves the same principle. . . .. . . The principle is no invasion of the absolute right of property, for that absolute right involves a relation, in that it implies the right of each adjoiner, as against the other, to insist on a separation by a boundary more substantial than a mathematical line. This imaginary line is common, and so ought the real one to be, and it is only in the character of this that the difficulty lies which requires legislation. When it is constructed, the regulation of its enjoyment and repair is as plain as that belonging to any other property held in common. And there is nothing more severe in submitting the question of the sufficiency of walls in the city to the city surveyor, than there is in submitting the sufficiency of fences in the country to fence viewers. The principle is the same, and if the interests involved in the one case are greater than in the other, it is only because of the nature of city property, that it requires more expensive partition walls or fences than are required in the country. The provisions of the law are substantially the same in both cases."

This language was applied to the Act of 5th April, 1849, P. L., 411, but it is equally applicable to Act of 1857 above quoted. The Act of 1849 is not given in Purdon, for the reason probably that the editor regards it as superseded or supplied by the Act of 1857. Both acts were clearly intended to give a summary remedy for settling disputes in regard to

party walls. That some such remedy is essential in large cities is self evident. If the erection of buildings is to be delayed pending ordinary common law or equity proceedings, such delays would be ruinous and intolerable. The Act of 1857 refers the whole matter to the building inspectors, with an appeal to the board of surveyors as provided by the Act of 1855. It is manifest that this reference to the Act of 1855 is a mistake, however, as that Act does not relate to the taking down of party walls, and there is no provision in it for an appeal to the board of surveyors. Moreover, the title to the Act of 1855 does not correspond with the statement of it in the Act of 1857. The Act of 11th April, 1856, P. L., 320, has a title in exact accord with the description thereof in the Act of 1857, the fourth section of which authorizes the building inspectors to examine and condemn all walls alleged to be dangerous, and provides for an appeal within three days to the board of surveyors. It is probable the reference to the Act of 1855 in the Act of 1857 was a blunder of the draftsman or a mistake in transcribing in substituting the Act of 1855 for that of 1856. If not, then no appeal is given by the Act of 1857 and the reference to this act of 1855 is a nullity.

The wall in question was condemned by the building inspectors upon notice to the plaintiff. He refused to take down the wall or to allow the defendant to do so, whereupon the latter applied to the Court of Common Pleas by petition setting out the facts and praying for an order upon the plaintiff in error to take down said wall or permit the petitioner to do so. An answer was put in by George R. Childs, plaintiff in error, and after a hearing the order prayed for was made.

A number of assignments of error have been filed to this action of the court below, the most material of which are, 1st, That no affidavit of facts had first been filed by the building inspectors setting forth the said violation particularly, and 2d, There was no proof of the allegations of fact in the petition, which were denied in the answer.

It seems to have been assumed in support of the second objection that it was the duty of the court below to have referred the case to a master to have found the facts as in the case of a bill in equity. This view entirely ignores the whole scope and spirit of the Act of 1857, which was intended, as before stated, to give a summary remedy. Under that Act the decision of the building inspectors was final and conclusive, saving only an appeal to the board of surveyors which must be taken within three days. The Act gives no appeal to the Court of Common Pleas, and that court has no jurisdiction to review the case upon the merits. If it has jurisdiction at all, it is only to enforce the decision of the building inspectors, as was done in this case.

Aside from this the case is here upon a *certiorari* which brings up nothing but the record.  The testimony upon which the court below acted is not here, and we must presume so far as disputed questions of facts are concerned that they were decided upon evidence satisfactory to the court.  It might have been done by oral testimony at bar.

In regard to the absence of an affidavit, it is to be observed that the Act of 1857 does not, as this Act of 1849 did, contain a provision requiring the Court of Common Pleas to enforce the order or decision of the building inspectors.  Such a proceeding is not essential under the Act of 1857, and I can see no necessity for going into that court for such a purpose.  The decision of the building inspectors is a finality and the Act declares that "the wall shall be taken down by the last builder," and if the latter is interfered with in doing so, it is simply an unlawful interference which any Court of Common Pleas may, by virtue of its equitable powers restrain in a summary way by an order or an injunction; or if such interference amounts to a breach of the peace, the Court of Quarter Sessions would have the power to bind the offending parties over to keep the peace.

The 10th section of the Act of 7th May, 1855, P. L., 463, has no application.  That section provides certain penalties for erecting buildings contrary to the building laws, and authorizes the Court of Common Pleas upon petition, verified by the oath or affirmation of a building inspector, to restrain such unlawful erection by an injunction.  It has no reference to the question of condemnation of party walls.

The further point was made that the appeal given by the Act of 24th February, 1721 (1 Sm. L., 124), and the Act of 15th April, 1782, 2 Id. 48, has not been taken away by subsequent legislation.

It is a sufficient answer to this to repeat what was said by the court in Evans *v.* Jayne, (*supra*) in speaking of the Act of 1849: " This proceeding was under the Act of 5th April, 1849, and the process there provided is complete in itself without any appeal, and we cannot imply that any was intended; and herein too it resembles the fence laws."

If, however, we concede that the proceedings below were irregular for want of an affidavit it would not help the plaintiff in error.  It was admitted upon the argument that the wall has been taken down and rebuilt.  The court below merely enforced the decision of the building inspectors.  There is and was no appeal from the latter to that court.  There might, perhaps, have been an appeal to the board of surveys, but there was none.  It would do no good to reverse the court below for simply enforcing the order of the building inspectors,

unless we could at the same time reverse the decision of the building inspectors.   This we have no power to do, unless perhaps for an irregularity in condemning the wall, and this has not been shown.

The proceedings are affirmed.