## HUGH McVEY v. JOHN DURKIN.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued April 3, 1890—Decided October 6, 1890.

1. A wall between two buildings of adjoining owners, used as a common wall continuously for a period of more than twenty-one years, becomes a party wall to the properties, whether equally upon the lot of each, or wholly upon the lot of one owner.

2. Where such a wall, condemned by the Philadelphia building inspectors, under the act of May 20, 1857, P. L. 590, has been removed, and another erected in its place and approved by the inspectors, the owner removing and rebuilding is not liable in trespass therefor.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 182 January Term 1890, Sup. Ct.; court below, No. 693 June Term 1888, C. P. No. 2.

On August 4, 1888, Hugh McVey brought trespass against John Durkin, to recover damages for unlawfully tearing down a wall of defendant's house. Issue.

At the trial on October 30, 1889, the defence was made that the wall torn down by the defendant was a party wall, which had been condemned by the building inspectors, under the act of May 20, 1857, P. L. 590. The facts sufficiently appear in the opinion of the Supreme Court.

Charge of Court below.

The plaintiff claiming that the wall in controversy was wholly upon his lot and was not a party wall, called Henry H. Stallman, who testified that he was a surveyor and civil engineer by profession; that, as surveyor of the district, he had made a survey and plan of the plaintiff's lot, according to the United States standard, showing that his northeast wall, the wall in dispute, was wholly on plaintiff's lot, and that the portion at the rear which had been torn down and rebuilt by the defendant was 4½ inches within plaintiff's line. The plaintiff offered the plan in evidence. Objected to. Objection overruled and plan admitted; exception.[1]

At the close of the testimony, the court, PENNYPACKER, J., charged the jury:

The claim of the plaintiff here is for injuries caused by the alleged illegal entering upon his premises by the defendant, and injuring his property. The injuries which are alleged to have been done are, as I understand it, threefold. It is claimed, in the first place, that upon these buildings, which are stone in front and frame in the rear, the defendant broke into the stone wall for the sake of inserting his joists in the erection of a new building; and that, as to the rear, which was frame, he took down the partition wall; and, thirdly, that in the course of this work, if it was legally done, the work was not done in a workmanlike way, and that there were injuries to the plaintiff's premises which were unnecessary.

The first question, probably, which you will be called upon to determine, is as to whether or not this wall was a party wall. There has been a good deal of testimony and considerable discussion in this case about the standard of measurement, but it seems to me that that matter will not affect you seriously in coming to a conclusion. It appears that a good many years ago these lots were laid out by a man named King, and that the standard of measurement which he used was the United States standard. Now, it appears that the predecessors in title to both of these lots got their lots according to that measurement; and a change in the standard since, of course, could not in any way affect the location of the lots. It would be an absurd thing to say that because a standard had since been adopted which shortened the distance a foot,—and the testi-

Charge of Court below.

mony is that the difference between the city standard and the United States standard is three eighths of an inch in thirty feet,—that therefore the lots and ownership of the ground in this city are to be affected.

In addition to that, it appears in this case, and apparently without dispute, or at least with very little dispute, that these properties were in substantially the same condition, when this work was commenced, as they had been since 1848. Both of these houses were erected, at that time, and, even if there had been a difference as to the measurements, then, the fact of these properties having been owned and occupied adversely for that length of time would give a title to them in their present shape and condition under the statute of limitations.

I shall confine myself, in the first instance, to the question whether this front wall, or stone wall, between the two properties in front, was a party wall. Upon that subject, Mr. Lightfoot says that the northeast face of the wall, that is, the wall of the property belonging to the plaintiff, was on Goodman's property. Goodman was the grantor of the plaintiff. Stallman says that the wall of McVey's house is on his northeast line; and Mr. McVey himself testified that according to the report which was made to him by the lady from whom he bought, his wall was eight inches over on his property; and he further testified that there were no joists from the other side in this wall. [So that, if you believe that testimony, the wall was not used as a party wall. If you should find that this wall was all on Mr. McVey's property, and that it had not been used by the other side for the insertion of joists or otherwise, then it was not a party wall.] [2]

On the other hand, however, Mr. Steel, who is a gentleman employed in the surveyor's department in that district, testified that if the measurement was according to the United States standard, which, as I have said to you, was the standard at the time these lots were laid out, the end on Centre street would be right, but that it would cut off about four and a half inches in the rear from McVey's house; in other words, that, as you run back, a part of McVey's house is upon the line and across the line. Now, if these houses were built with the wall partly on the line of the adjoining property and extending beyond it, the presumption would be that it was for the purpose of mu

tual support, and it would be a fact from which you might infer that it was intended that this wall should be a party wall.

Then Mr. Durkin tells you, and he says it very positively, that the joists in his second story rested on that partition wall, the northeast wall of McVey's house. If you should find that to be the case, it would be the strongest evidence that this was a party wall; and, if it was a party wall, used in this way for these purposes and, especially, for the number of years that elapsed in this case, Mr. Durkin would have a right still to use it, and it would not be trespass for him to insert his joists into it in building his new structure.

The next question is as to the taking down of the partition between the frame structures; and upon this subject I will read to you what the law says in regard to the taking down of an old wall and the erection of a new one:

"It shall be the duty of the inspectors of buildings, upon the application of any person or persons about to erect on his or their lot or lots of ground a new building, to examine all such party or division walls upon or adjoining said lot of ground, and if deemed and adjudged by them to be insufficient and unfit for the purpose, such party or division wall shall be removed and taken down by the last builder:" Act of May 20, 1857, P. L. 590.

It is alleged upon the part of the defendant that he took down this wall in consequence of the fact that this partition had been condemned by the building inspectors, and under an order from them to do so. [As you see, that act gives the right to the building inspectors, in the case of a party or division wall, so that the same question arises whether as a matter of fact this partition was a party wall between the parties, because their jurisdiction extends only to party or division walls.] [3]

Upon this subject, and it seems to be the most important part of the case, the evidence, as sometimes happens about material portions, is not very clear, and not very decided. .... These are the facts from which you will have to determine, and if there are other facts, you will consider them, of course, as to whether or not this was a party or a division wall. If it was a party or a division wall and the building inspectors ordered it to be taken down, and there was no appeal taken by

the plaintiff here, the finding of the building inspectors in that respect is conclusive and final.

It is only conclusive, however, as to the direction to take down a party wall. It cannot be made to answer for other purposes. It was not part of their jurisdiction to determine the lines between these parties. That would come up before another body. It is true the surveyor of the district was here, and he told you that he had laid out the line for Durkin. That, however, would not conclude McVey, for the reason that to make it conclusive upon McVey there should have been previous notice given him. The law has wisely directed that these questions of boundaries shall be determined by a body competent to do so, which is the bureau of surveys. But the rights of the parties are protected, and there is a right of appeal from their decision; and in order that the parties may be protected, it is necessary, in order that they may be held, that there should be previous notice given. . . . .

It does appear in this case, from the evidence of the defendant, that when this wall was taken down, or this frame partition, that the line was straightened; that is, Mr. Steel tells you that he ran a straight line, and that these people substantially conformed to it. He also tells you that the line before was not straight; that there was an angle in it and it ran crooked. So that it appears that at this time there was a change from the line; and I instruct you that to that extent the order of the building inspectors would be no justification.

If you go beyond this, and you find that there has been a trespass in this case, the next question is as to what should be the damage, . . . . .

I have some points upon which I have been requested to charge. In the first place, I shall answer the plaintiff's points:

5. If the jury find that the defendant unlawfully went upon the premises of the plaintiff and wantonly and maliciously injured the plaintiff's house and property, the jury may, in addition to damages by way of compensation, award the plaintiff such damages as will punish the defendant for such wanton, malicious and unlawful act.

Answer: We affirm this point, but I leave it to you to consider whether the evidence in this case warrants any inference that what was done was done wantonly and maliciously. It

Arguments.

seems there was a question, arising out of the different stand-ards of measurement, as to where these lines were. The de-fendant seems to have gone to the plaintiff to endeavor to settle it outside of court, and to have had the instructions of the building inspectors and the board of surveys; and I leave it to you to consider whether under this evidence you can find that there is anything wanton or malicious in the action which he has taken, even if you should find the facts in this way.[4]

I will now answer the defendant's points.

1. That if the jury find from the evidence that the house of the defendant was built more than twenty-one years prior to June, 1888, the date of the alleged trespass, then the plaintiff is not entitled to recover for the use by defendant of the stone division wall between the house of the plaintiff and defendant.

Answer: This is declined.[6]

2. That if the jury find from the evidence that the wooden partition between defendant's and plaintiff's back buildings was condemned by the building inspectors and ordered to be taken down, then the defendant is not guilty of trespass in re-moving said partition.

Answer: This point is affirmed, if you find it was a division or party wall.[7]

The jury returned a verdict for the plaintiff for $650. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal assigning for error:

1. The admission of plaintiff's offer.[1]

2, 3. The parts of the charge embraced in [ ] [2] [3]

4. The answer to plaintiff's point.[4]

6, 7. The answers to defendant's points.[6] [7]

*Mr. Joseph Savidge* and *Mr. F. Carroll Brewster*, (with them *Mr. Edmund B. Seymour*), for the appellant.

Counsel cited: Doyle v. Ritter, 6 Phila. 577; Western N. Bank's App., 102 Pa. 171; Oat v. Middleton, 2 M. 248; Ingles v. Bringhurst, 1 Dall. 367; Hart v. Kucher, 5 S. & R. 1; Todd v. Stokes, 10 Pa. 155; Davids v. Harris, 9 Pa. 501; Vollmer's App., 61 Pa. 121; Dannaker v. Riley, 14 Pa. 435; Bell v. Bronson, 17 Pa. 363; Barns v. Wilson, 116 Pa. 303; act of May 20, 1857, P. L. 590; Lyster v. Bitner, 7 Phila. 349.

*Mr. Sheldon Potter* and *Mr. Leoni Melick*, for the appellee.

OPINION, MR. JUSTICE STERRETT:

It appears that, in 1847, Robert H. Thomas, owner of lot fronting sixty feet on Centre street, erected thereon two adjoining houses, numbered 255 and 257. In May, 1848, he conveyed the house and lot No. 255, thirty feet front on Centre street by one hundred and fifteen feet in depth, to William Selzer, and in June, 1848, he conveyed the other house and lot, No. 257, also thirty feet front by one hundred and fifteen feet in depth, to Sarah Strouse. By sundry mesne conveyances, title to the former became vested in the plaintiff, and, by like assurances, the title to the latter became vested in the defendant. Both houses were stone front, with wall of same material between them, and back building divided by a frame partition. In July, 1888, the defendant, being about to improve his lot by erecting thereon two brick buildings, in lieu of the old stone and frame building, was notified by the building inspectors that they had condemned the wooden partition or division between the old back buildings as insufficient for the building defendant was about to erect, and ordered the same to be taken down. Pursuant to that notice, he removed the frame partition or division wall and erected in place thereof a nine-inch brick wall, which was afterwards approved by the building inspectors. He also utilized the old stone partition or division wall as a party wall. The trespass complained of is alleged to consist in using the old stone wall, taking down the wooden partition, and the careless manner in which the latter work was prosecuted.

It appears to be an undisputed fact that from the time the lots passed to different owners, in 1848, down to 1888, when the defendant commenced to rebuild, the respective owners and their tenants occupied their lots and houses, separated from each other only by the stone wall and wooden partition aforesaid. In view of that long-continued occupancy and possession by the owners of the respective lots, it matters little whether the stone wall and wooden partition separating the two houses were exactly on the dividing line between the two lots or not. The uncontroverted evidence is that the owners of the houses and lots were each in the exclusive possession of their respective lots and houses long enough to give each, as against the

other, an undisputed title by possession, and thus constitute the stone wall and wooden partition a party wall. In Western N. Bank's App., 102 Pa. 171, it was held that a partition or wall erected and continuously used by adjoining owners for a period of twenty-one years, whether the same be erected equally on the lot of each party, or is wholly within the lot of one of the adjoining owners, is in the eyes of the law a party partition, or wall, and if condemned by the building inspectors, and removed, and another erected in its place, the party so removing the old and erecting the new wall is not guilty of trespass.

In his first point for charge, the defendant requested the court to say: " If the jury find from the evidence that the house of defendant was built more than twenty-one years prior to June, 1888, the date of the alleged trespass, then the plaintiff is not entitled to recover for the use by defendant of the stone division wall between the plaintiff and defendant." This point was refused, and in that we think there was error. The main fact of which the point was predicated was not seriously disputed, and the jury could not have found otherwise than that defendant's house was built more than twenty-one years prior to the commission of the alleged trespass. The error was fundamental, and may have had a controlling effect in shaping the verdict.

The affirmance of defendant's second point was so qualified as to depend on the finding of the jury that the wooden partition between plaintiff's and defendant's back buildings was in fact a division or party wall. As we have already seen, the undisputed evidence is that the partition in question was used for more than twenty-one years, prior to the commission of the alleged trespass, as a partition or division wall between the two back buildings, and hence it should have been treated as a party wall. The point should have been affirmed without the qualification complained of in the sixth specification.

There was no error in admitting in evidence the plan referred to in the first specification. It was identified by the witness, and referred to in his testimony, and was properly admitted in connection therewith. Nor was there any error in the answer of the court to plaintiff's fifth point recited in the fourth specification. The somewhat guarded affirmance of the

point was warranted by the evidence.   The remaining specifications are not sustained.

Judgment reversed, and a venire facias de novo awarded.