## Bright *v.* Morgan, Appellant.

*Party wall—Division wall—Adverse use.*

Where a person erects a building on his own lot, and inserts the joists thereof in a wall which is wholly upon his neighbor's lot adjoining, and the use of the wall as a support for the joists is continued for over twenty-one years, the right to use the wall must be determined, in the absence of any evidence of an agreement, by the use actually made of the wall, and must be limited to the extent to which the wall has been used without any right to place any further burden thereon.

Argued March 4, 1907.   Appeal, No. 370, Jan. T., 1906, by defendant, from decree of C. P. Berks Co., No. 881, Equity Docket 1905, on bill in equity in case of Joseph C. Bright v. Mary Morgan et al.   Before MITCHELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ.   Affirmed.

Bill in equity for an injunction.

ERMENTROUT, P. J., filed the following opinion:
From the evidence submitted I make the following.

### FINDINGS OF FACT.

1. Joseph C. Bright, the plaintiff, is the owner in fee simple, and has possession of a lot of ground with store building thereon erected, Nos. 504–506 Penn street, Reading, Pa.   Said property is bounded on the west by a hotel property known as the Mansion House.

2. The defendants, Mary Morgan and E. Miltimore Morgan, own in fee simple the said hotel property known as the Mansion House, having for its eastern boundary the aforementioned property of Joseph C. Bright.   The trust company of North America and James Nolan, trustee, are named as parties defendants because each of them holds a mortgage upon the Mansion House property, and the said Joseph D. C. Umble is named as a defendant because he is in possession of the said property under a long lease thereof made by the said Mary Morgan and E. Miltimore Morgan to him.

3. So far as the purposes of this case are concerned, I find that Harriet deBenneville Keim was the predecessor in title of both plaintiff and defendants; that plaintiff's property was

part of a lot of ground numbered in the general plan of the city of Reading No. 15, and the defendants' property was part of a lot of ground numbered in the general plan of the said city, No. 16.

4. Prior to February 13, 1856, back to 1841, and practically unchanged until 1856, there was erected upon the property of the plaintiff a three-story brick house with attic fronting on the south side of Penn street, along the western wall of which house and to the depth of thirty-three and one-half feet southward extended an alley three feet in width, the alley and the ground upon which it was located also originally belonged to said lot No. 16, and which said strip of ground was shortly before February 13, 1856, attached to the said three-story brick house property as an alley, the fee thereof then vesting in said Harriet deBenneville Keim. At or about said date the said western wall on plaintiff's property was and had remained in its appearance and construction as it had existed and had been constantly maintained upon the property from the time it was built, the defendants and their predecessors having no right or title thereto, or any interest or rights whatever therein. The said western wall of said building was what is known as a gable end with the center projecting above the roof and the roof sloping therefrom both ways to the north and south respectively. The defendants' property at that time consisting of a two-story brick building situate on the corner of Fifth and Penn streets, standing back from the building line of Penn street, completely and totally departed from the building of plaintiff by said three-feet alley, was then owned by the Miltimore estate, one William L. DeBorbon being in possession of the said hotel property as life tenant.

5. On February 13, 1856, Harriet deBenneville Keim conveyed the three feet of ground whereon said alley was located to William L. DeBorbon, the deed description of the said ground so conveyed being as follows : " All that certain lot, strip or piece of ground, situate on the south side of Penn street, commencing at a distance of fifty-seven (57) feet east of Fifth (formerly Callowhill) street in the said city of Reading, thence extending eastward three (3) feet, containing in front or breadth on said Penn Street three feet by thirty-three-and-a-half feet in depth, bounded on the north by the said Penn Street, on the west by

a part of a lot of ground on which is erected the Mansion House, belonging to the said William L. DeBorbon, numbered in the general plan of said City No. 16, of which this strip of ground was formerly a part, on the south by other part of said No. 16, and on the east by part of the lot numbered No. 15, in said plan belonging to the said Harriet deB. Keim, to which this strip of land was lately attached as an alley."

6. In 1856, after the acquisition of the narrow strip of ground upon which the alley had been located, Mr. DeBorbon enlarged or reconstructed his Mansion House building, extending it across the three feet of ground which had been used for the alley, and inserted the joists of his building in the western wall of the Keim building, using that wall as part of the eastern wall of his hotel building. The use then made of this wall was by inserting the joists of the Mansion House therein, building against it, supporting some of the joists of their building thereon, and building upon the top of the eastern southern portion of the said wall for the purpose of raising the Mansion House four stories in height. Defendants in their answer admit that upon this occasion the said wall was used as part of the Mansion House property to a depth of forty-three feet, five inches south from Penn street. At the time these improvements were made Harriet deB. Keim was the owner of plaintiff's building. There is no evidence of record nor have any of the parties to this litigation shown any agreement or arrangement or the terms thereof under which Mr. DeBorbon, in 1856, inserted the joists of his enlarged hotel building in the western wall of Mrs. Keim's building. Nor up to the time of the bringing of this bill in equity does it appear that any objections thereto have been made by the plaintiff or his predecessors in title.

7. On May 31, 1898, plaintiff acquired title to this property from Bright & Lerch, Limited, who acquired title to it on May 29, 1883. Bright & Lerch, Limited, was a limited copartnership organized under the laws of the commonwealth of Pennsylvania, of which copartnership plaintiff owned two-thirds of the stock outright, and virtually owned sufficient of the remainder of the stock to make his entire holdings three-fourths of the stock of the said copartnership.

8. About the year 1905, Bright & Lerch, desiring to enlarge

the store building upon their property, tore down the whole building with the exception of the western wall aforesaid, and in the reconstruction of their new building used said wall as a curtain wall, thereby meaning simply a wall to inclose the building, a steel structure being built into the wall a few inches, with flat columns located on their own foundation from the foundations up to the top of the roof, the girders being slipped into these.

9. In the fall of 1896, defendants increased the height of the Mansion House building by adding two stories thereto, and for that purpose increased the height of the said wall, and inserted and supported additional joists of the new part of their building in and on part of the wall so added.

10. At no time, neither when Bright & Lerch enlarged their building nor when the defendants and Mr. DeBorbon increased the height of their building, does it appear there was any written or parol agreement or any conversation by or between the parties hereto as to their respective rights in the wall ; nor does it anywhere appear that any examination of the respective rights of the parties in and to said wall was ever made, all of the said various building operations being plainly visible and known to all the parties, plaintiff and defendants, owners at the time of their being carried on.

11. I find that the outer wall of the plaintiff's property is entirely upon the property of the plaintiff and belongs to him, and that at no time by any use, acts or agreement of the respective parties to this bill, or their predecessors in title, did it ever become a party wall, and that the rights of the defendants are as follows : The support of the joists of the Mansion House building in and upon said wall as the said building has been and now is, and as the said joists have been and are now inserted and supported therein and thereon.

12. When the defendants enlarged their Mansion House building in 1896, by building upon said wall, they believed they had a right to the use of the said wall in common with the plaintiff, and the plaintiff and Bright & Lerch knew that the defendants were so enlarging the Mansion House. The enlargement could be seen from the street, the plaintiff coming to Reading about once a week while the building operations were going on.

13. Plaintiff's bill alleges " that the said Mary Morgan and E. Miltimore Morgan assert an ownership by them of the said wall and a right to further increase the height of the same, and that the acts and claims of ownership so done and made by the said Mary Morgan and E. Miltimore Morgan create a cloud upon your orator's title, and your orator fears that by lapse of time and the subsequent loss of evidence, the said acts and claims will give to the said Mary Morgan and E. Miltimore Morgan rights in the said wall and in the ground whereon the said wall is built and rests, in derogation of your orator's ownership thereof, and your orator is suffering and will suffer irreparable injury therefrom, and your orator has no adequate remedy at law." Defendants in their answer admit that they use said wall as part of the said Mansion House property, but deny that they have any present intention of raising said wall and enlarging their use of the same, but aver that such use would not invade any of the plaintiff's rights, and aver that they have a right to the use of said wall in common with the said plaintiff. Under the pleadings and the facts, courts of equity have jurisdiction of the subject, and the plaintiff is entitled to relief.

14. The plaintiff does not ask for any decree obliging the defendants to open their building by removing the additional wall erected in 1895, but simply asks that they be restrained from further aggression upon his rights.

### FINDINGS OF LAW.

1. There being no evidence showing or tending to show the terms of the arrangement under which Mr. DeBorbon in 1856 began to use the plaintiff's wall, the extent of the right to use the wall acquired by Mr. DeBorbon must be determined and measured by the use he actually made of the wall, and must be limited to the extent to which the wall has been used.

2. Defendants have no right to place any further burden on the wall, but may continue the use to the extent to which it has been practiced: McManus v. McIlvaine. 2 Woodw. 146.

### DISCUSSION.

Upon an examination of the authorities relating to party wall, I find the following principles to be well settled :

Where a building wall is located entirely upon the property of one adjoining owner, there is no presumption that such a wall is a party wall, and, therefore, where one person goes upon the property of another, and wrongfully and without any claim of right builds upon a wall, he is a trespasser, and he will be compelled by injunction to remove the wrongful construction: Bright v. Allan, 203 Pa. 394. To prevent his being a trespasser he must show either a grant or a prescriptive right of use or agreement or consent so to use it.

In amplication of this statement of law it has been decided that " the erection of a division wall by one of two adjoining owners under an agreement that the other shall pay his share of the costs upon making use of the wall renders the wall a party wall:" Euwer v. Henderson, 1 Pennypacker, 463.

It has also been decided that " a wall erected and continually used as a division wall by adjoining owners for twenty-one years is a party wall, even though it does not rest on the division line but is wholly within the land of one of the adjoining owners:" Appeal of Western National Bank, 102 Pa. 171; McVey v. Durkin, 136 Pa. 418; Lukens v. Lasher, 202 Pa. 327.

It is also decided that " a preliminary injunction to restrain the taking down of an alleged party wall will not be sustained where it appears that the wall was entirely on the land of the defendant, and where, there being no express grant, the easement or right of plaintiff to have the wall maintained as a party wall must depend wholly upon prescription based upon a user invisible to and unknown by the owner, who was a successor in the title after the alleged imposition of the easement:" Harrison v. Bank, 13 Pa. Superior Ct. 274.

It is also well established that where there is no evidence, either written or oral, as to the terms under which a division wall has been used, the court can only determine what the terms were by what was done without dispute by the parties on the land at the time of the erection of the buildings, and subsequently, as in case of an easement by prescription, and in case of the prescriptive use of the party wall, the right is limited to the extent to which the wall has been used: Bright v. Allan, 203 Pa. 394; Allegheny National Bank v. Reighard, 204 Pa. 391; Putzell v. Drovers' & Mechanics' Nat. Bank, 78

Md. 349 (28 Atl. Repr. 276); Barry v. Edlavitch, 84 Md. 95 (35 Atl. Repr. 170).

The last two cases are especially pertinent to the one under consideration. The defendants by the DeBorbon operations acquired a prescriptive right in the wall to the extent of its use. The plaintiff having the wall upon his property could use his own wall for any purpose desired without intendment being made against him that by such use it has become a party wall.

In Putzell v. Drovers' & Mechanics' Nat. Bank, 78 Md. 349 (28 Atl. Repr. 276), the rights of the defendants by such actions are thus defined : " The defendant had used his wall for more than twenty years as a support to his house ; the enjoyment of it for this purpose had been notorious, peaceable, uninterrupted and ' as of right.' Under these circumstances, the law considers that he had a prescriptive title to the use of it in the manner in which he had enjoyed it. It is conducive to the peace of society that claims of right which for a long time have been acquiesced in and regarded as settled be protected by the law, and the space of twenty years has been adopted as the period for ripening claims of this description into titles. . . . The adjoining owner retained all its rights in the division wall which are not inconsistent with the enjoyment of the easement. It was bound to permit it to be used as a support for the adjoining owner's house in the accustomed manner, but this is the limit of its obligation. It would be unreasonable to deny to it the right to improve its own property according to its interests and inclinations, provided it did not infringe the rights of other persons."

In the case of Barry v. Edlavitch, 84 Md. 95 (35 Atl. Repr. 170), the respective rights of adjoining owners are thus defined : " Now in this case the wall in question stands wholly on the land of Barry, and there is nothing in the case, beyond this fact, to explain the use of the wall by Edlavitch. . . . It was a mere burden upon his property, open, adverse and acquiesced in by him. No other inference whatever can be drawn from its existence, except that which the law implies, viz. : a grant to do the things that had been done for so long a time. There is nothing in the case from which it can be presumed that either party intended that the wall should be

a party wall, except to the extent and for the purpose of supporting the appellee's building as it had been supported for so many years. That was, therefore, the extent of the appellee's right, namely, to enjoy the use of the wall for the support of his house as it then existed. The wall being the property of the appellant, and on his own lot, there can be no reason assigned why he could not strengthen it, and add to its height, if he chose to do so, provided it was done without detriment to the other party's right."

We are relieved of all discussion as to the rights the defendants acquired under the operations of 1896. The plaintiff at the hearing expressly declined to oblige the defendants to open their building by removing the additional wall erected in 1896, but asks that they be restrained only from a further alleged aggression upon his rights. We have, therefore, in the findings made, limited the defendants to the rights of support and uses of the wall as they actually exist at present. This necessarily will give them the full right to repair the wall and uphold and maintain whatever rights thereto they now actually enjoy.

The plaintiff is entitled to the relief asked for, and counsel for plaintiff may prepare for submission and signature of the court a decree accordingly.

*Error assigned* was decree awarding the injunction prayed for by the bill.

*W. K. Stevens*, of *Stevens & Stevens*, for appellants.—The western wall of the Bright property being a division wall to a depth of forty-three and a half feet southward from Penn street, and having been continuously used in common by the adjoining owners for above twenty-one years, is a party wall, even though it is wholly built within the land now owned by the plaintiff: Graves v. Smith, 87 Ala. 450 (6 So. Repr. 308); Fettretch v. Leamy, 22 N. Y. Super. Ct. 510 ; Harber v. Evans, 101 Mo. 661 (14 S. W. Repr. 750) ; McVey v. Durkin, 136 Pa. 418 ; Western Nat. Bank's App., 102 Pa. 171 ; Lukens v. Lasher, 202 Pa. 327 ; Bright v. Allan, 203 Pa. 394.

*Cyrus G. Derr*, for appellee, was not heard.

PER CURIAM, May 13, 1907:

The decree is affirmed on the findings and discussion of law
. by the court below.