Ailisa SOBIEN and Frank
Sobien, Appellees,

v.

James MULLIN, Appellant.

Superior Court of Pennsylvania.

Argued March 14, 2001.
Filed Aug. 31, 2001.

**796**

Michael E. McCarthy, Pittsburgh, for appellant.

Thomas L. Campbell, Pittsburgh, for appellees.

BEFORE: ORIE MELVIN, TODD, and KELLY, JJ.

ORIE MELVIN, J.:

¶ 1 Appellant, James Mullin, appeals from the judgment entered on the jury verdict finding him liable for the cost incurred by Appellees, Ailisa and Frank Sobien (the Sobiens), in re-framing and siding their end wall, which had become exposed to the elements due to Mr. Mullin's removal of his condemned building. On appeal, Mr. Mullin claims the trial court erred in refusing his request for a judgment notwithstanding the verdict (JNOV). We reverse and remand.

¶ 2 This case involves party wall rights between adjoining landowners in the City of Pittsburgh, Allegheny County, Pennsylvania. The relevant facts are not seriously in dispute. Mr. Mullin has owned the lot located at 876 Progress Street for the past twenty-five years. The Sobiens purchased the adjoining lot numbered as 874 Prog-

ress Street in 1995. The buildings on the respective lots date back to the early 1900's. The building on Mr. Mullin's lot was built first, and its brick side wall adjacent to the Sobiens' lot was constructed wholly within Mr. Mullin's property line. The original owner of the Sobiens' lot built their residence in such a manner that the interior framing of their north wall butted up against Mr. Mullin's brick wall using it as a curtain or firewall and thereby encroached upon Mr. Mullin's property. The structural weight bearing wooden beams ran from front to back, and there was no tie into Mr. Mullin's side wall. The parties were unable to determine whether at the time of this construction the lots were owned individually or by the same person. However, this information was unnecessary in deciding whether the wall was intended as a party wall because the Sobiens alleged they had acquired prescriptive rights to the continued use of the wall as a protective wall.

¶ 3 On August 29, 1996, Mr. Mullin posted his building with a notice of intent to demolish and the requisite permit obtained. On September 30, 1996, demolition of Mr. Mullin's building began pursuant to the City's notice of condemnation. During the demolition work it was first discovered that the Sobiens' adjacent wall did not have any exterior finishing material. After having removed the upper floor of the Mullin building the Sobiens' third floor attic became exposed to the elements. At this point the Sobiens called the police, who directed the contractor to cover the third floor with a tarp and notified the Bureau of Building Inspection. The following day a building inspector visited the site and determined the brick wall could not remain standing independent of the building and directed the work to proceed. After a three day delay to allow the Sobiens to remove their possessions, the de-

molition of the entire building was completed. Subsequently, the Sobiens hired a contractor to rebuild their exterior wall within their property line. The total cost of repairs was $33,620.61, which consisted of cutting back the framing to within the Sobiens' property line, enclosing the wall and making various repairs to the interior of the structure.

¶ 4 The Sobiens instituted suit to recover the cost of repairs alleging the acquisition of party wall rights through prescriptive use for more than twenty-one years. The complaint also alleged that Mullin negligently demolished the party wall and thereby deprived the Sobien structure of the support and protection it had received from the wall. Mullin filed an answer denying any liability and also a two count counterclaim seeking damages from the Sobiens. In Count I, Mullin sought damages for the allegedly unnecessary delay in the demolition of Mullin's structure caused by the Sobiens' complaints to the City of Pittsburgh. In Count II, Mullin sought compensation for labor and materials expended in enclosing the third floor of the Sobiens' property. By stipulation of counsel, Count II of Mullin's counterclaim was withdrawn, and Mullin proceeded only with Count I at trial.

¶ 5 A jury trial was held before the Honorable Cynthia A. Baldwin on February 7, 2000. At the conclusion of the Sobiens' case, Mullin moved for a directed verdict, asserting that the Sobiens had failed to demonstrate the existence of a party wall, that no proof of an interest acquired by adverse possession had been shown, that no structural interdependence had been shown, and that an absence of negligence had been conceded. Mullin also took issue with the Sobiens re-introducing the settled matter of repairs to the third story. The motion was denied. The jury subsequently returned a verdict in favor of the Sobiens on their claim awarding $33,621.61 in damages. The jury also returned a verdict in favor of the Sobiens on Mullin's counterclaim. Mullin filed a timely Motion for a Post–Trial Relief seeking Judgment N.O.V., or in the alternative, the grant of a new trial. The Sobiens filed a timely Motion for Delay Damages. Following the submission of briefs, the trial court entered an order dated May 31, 2000, which denied Mullin's Motion for Post–Trial Relief and granted the Sobiens' Motion for Delay Damages in the amount of $3,475.29 for a total award of $37,096.90. This appeal followed.[1]

¶ 6 Mullin presents his questions on appeal in a single statement as follows:

Did the [trial] court ... err in failing to grant a directed verdict or judgment n.o.v. when plaintiff failed to prove any of its original allegations, altered the theory of its case, and proceeded on a theory of strict liability and a concept of adverse possession not supported by the law?

Appellant's brief at 3.

When reviewing a denial of judgment notwithstanding the verdict, an appellate court must decide whether there was sufficient evidence to sustain the verdict; our scope of review is very narrow: all evidence and all reasonable inferences drawn therefrom must be considered in the light most favorable to the verdict

---

1. On June 28, 2000, Mullin prematurely filed his notice of appeal from the order denying post-trial relief. However, we note that if a party prematurely files a notice of appeal from an interlocutory order, the appeal is perfected once a final appealable order in

entered. *See Fernandez v. Levin*, 519 Pa. 375, 378–79, 548 A.2d 1191, 1193 (1988) (construing Pa.R.A.P. 905(a)). Instantly, the docket reflects judgment was entered on August 9, 2000. Thus, the appeal in this case has been perfected.

winner. Judgment notwithstanding the verdict can be entered only if the movant is entitled to judgment as a matter of law or if evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case.

*B & L Asphalt Industries, Inc. v. Fusco*, 753 A.2d 264 (Pa.Super.2000) (quoting *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super.1999)).

¶ 7 Party wall rights did not exist at common law. Rather, such rights are granted to adjoining landowners by statute, contract or prescription. *See generally Jackman v. Rosenbaum Co.*, 263 Pa. 158, 106 A. 238 (1919) (reviewing the developments of the party wall system in Pennsylvania), *see also* 69 C.J.S. *Party Walls* §§ 5 and 9 (1951). Ordinarily, a party wall is constructed upon the division line, and each adjoining lot owner has an easement on his neighbor's premises for the support or extent of use made of the party wall. *Id.* at § 1; *Bright v. Morgan*, 218 Pa. 178, 67 A. 58 (1907); 2 *Thompson on Real Property*, § 395 (1961); *See also* 53 P.S. § 24872 (stating "the superintendent of the [bureau of building inspection] ... shall have the line dividing said lot properly surveyed ... and the said party wall ... shall be equally one-half upon the land of each of the adjoining owners, ...."). Where a wall is built completely on the land of the builder, without the intention to give it the quality of a party wall, it is a division wall, and the laws regulating party walls do not apply to it. *Benner v. Pollard*, 53 Pa.Super. 227 (1913). A party wall has also been defined as follows:

A party wall may be defined generally as a wall located upon or at the division line between adjoining landowners and used or intended to be used by both in the construction or maintenance of improvements on their respective tracts, or, more briefly, as a dividing wall for the common benefit and convenience of the tenements which it separates. The term 'wall in common,' as sometimes used, has the same meaning as party wall. A distinctive feature of a party wall is that the adjacent buildings are so constructed that each derives its support from the common wall. Thus, where each of two persons is seised of a specified half of a wall and nothing more, and no right of support or shelter has been acquired by the one from the other, such a wall is not a party wall.

40 Am.Jur. *Party Walls* § 2 at 485 (1942). However, such a division wall may take on the character of a party wall by prescriptive use. *See Bright v. Morgan*, 218 Pa. 178, 67 A. 58 (1907) (stating " a wall erected and continually used as a division wall by adjoining owners for 21 years is a party wall, even though it does not rest on the division line, but is wholly within the land of one of the adjoining owners.").

¶ 8 Under the undisputed facts here presented, the wall in question was wholly upon Mullin's property and thus not a true party wall as contemplated by statute. Nor was there a scintilla of evidence of any express grant or intention to treat it as a party wall by the builder. Thus, the Sobiens' right to use Mullin's wall was wholly dependent upon the finding of a prescriptive easement. "A prescriptive easement is a right to use another's property which is not inconsistent with the owner's rights and which is acquired by a use that is open, notorious, and uninterrupted for a period of twenty-one (21) years." *Soderberg v. Weisel*, 455 Pa.Su-

per. 158, 687 A.2d 839, 842 (1997) (citing *Waltimyer v. Smith,* 383 Pa.Super. 291, 556 A.2d 912 (1989)).

¶ 9 Mullin first contends the evidence was insufficient to support a finding of a prescriptive right to use the wall because this use was not apparent. The record belies this contention. It is conceded that Mullin's structure was built first and then the Sobiens' home subsequently constructed. Further, the Sobiens' expert opined that their home was built in such a fashion that the interior framing of their north wall encroached upon Mullin's land and butted up against his brick wall. He also estimated the structures existed in this condition since the early 1900s. If this were a suit between the original owners of the buildings it may be conceded that the original owner of Mullin's building must have known of the acts of the Sobiens' original owner and the use of the wall made when the building was erected. However, here each lot has changed hands since these structures were built. Thus, the question becomes whether Mullin as a subsequent purchaser had notice of the alleged easement. In other words, could Mullin as a prudent purchaser exercising his power of observation see that the property he was about to purchase was burdened with an easement? *See Vanderwerff v. Consumers Gas Company,* 166 Pa.Super. 358, 71 A.2d 809, 811 (1950) (stating "A use must be apparent to be the subject of an implied easement on the severance of ownership. Such use however, need not be plainly visible; it is apparent when it may be discovered upon reasonable inspection."). If the use was apparent a presumption of an unqualified grant arises placing the burden on Mullin to prove the use was under license, indulgence or special contract inconsistent with the claimed right by the prescriptive user. *Stiegelman v. Pennsylvania Yacht Club,*

*Inc.,* 432 Pa. 111, 246 A.2d 116 (1968). In this respect the Sobiens' expert testified the front brick facade at the second story was tied together in a continuous fashion while the first floor gave the appearance of separate walls. Moreover, Mullin made no attempt to prove the use was under license, indulgence or special contract. While scant, we find the evidence sufficient to raise a jury question concerning the apparent nature of the use. Consequently, we will not disturb the jury's finding in this regard.

¶ 10 Alternatively, Mullin argues even if sufficient to establish a prescriptive easement he was, nonetheless, within his rights in removing the wall provided he did not do so negligently. Accordingly, since no evidence of negligence was proven, or even submitted to the jury, he therefore maintains he should not have been liable for the costs of rebuilding the wall. Based upon a careful analysis of the pertinent law regarding party walls and prescriptive easements, we agree that under the circumstances here present there was no duty to rebuild this wall.

¶ 11 Both parties rely on the case of *Thompson v. DeLong,* 267 Pa. 212, 110 A. 251 (1920) to support their positions. In *Thompson,* the parties were adjoining owners of a three-story double house with a division wall separating the two houses. The portion owned by DeLong was removed, thereby exposing the wall of the house standing on the neighboring property belonging to Thompson. DeLong then built a new two-story building on his property, which adjoined the old wall leaving the third floor of the Thompson premises exposed. Thompson sued claiming DeLong was negligent in failing to protect the exposed wall or to place flashing between the old and the new wall thereby causing damages to the interior of his premises due to water seepage. A verdict

was returned in favor of Thompson. On appeal the Supreme Court granted De-Long a new trial because it found the trial court erred in charging that Thompson was under no duty to protect his exposed wall and the obligation rested entirely upon DeLong. The court held the effect of such an instruction was to assume the evidence established negligence or that there was a custom in the trade to provide protection, which were both questions for the jury.

¶ 12 The Sobiens cite to *Thompson* for dictum that states once party wall rights are established their right to use the wall cannot be unilaterally destroyed by the servient owner. *Id.* 267 Pa. at 216, 110 A. at 252. Mullin cites to *Thompson* for the general rule recognizing his right to remove the wall in a non-negligent fashion. *Id.* While, generally speaking, both propositions are correct they must be placed in context in order to have any real meaning. In reaching its decision the Supreme Court did not rely on either of the propositions cited by the parties to this appeal. Rather, its analysis was based solely upon an examination of Thompson's claims of negligence. Accordingly, *Thompson* offers little, if any, guidance in determining whether removal of a party wall places a duty on the party so removing to rebuild the wall under the facts of this case.

¶ 13 The pertinent law overlooked by the trial court and the parties to be applied in resolving this controversy concerns the termination of easements. The critical question then is did the Sobiens' easement in the wall terminate when the wall was rendered useless to either party through no fault of Mullin? Our response is in the affirmative.

¶ 14 Although specific Pennsylvania authority under these facts appears to be non-existent, the authorities from other jurisdictions are almost uniformly in agreement that where a party has acquired an easement of support in a party wall, the accidental destruction of the wall terminates the easement and extinguishes all rights arising thereunder. *See, e.g., Bowhay v. Richards,* 81 Neb. 764, 116 N.W. 677 (1908) (stating "Where a wall is entirely upon the property of one party, the right of an adjoining owner to have support therefrom, whether derived from contract or acquired by prescription, is in the nature of an easement, which is terminated upon the destruction of the building by fire."); *Hoffman v. Kuhn,* 57 Miss. 746, 34 Am.Rep. 491 (1880) (holding the easement is at an end where the houses are destroyed without the fault of either owner); *Mandelbaum v. City of Kansas City,* 988 S.W.2d 133, 137 (Mo.App.1999) (stating "[the plaintiffs] did not establish that anyone owed them a duty of continued support once the adjoining building fell into such a state of disrepair that the city declared it to be dangerous. When a wall which had served as a party wall ceases to exist, the easement of support terminates."); *see also* 59A Am Jur 2d, *Party Walls* § 32 n. 34 (collecting cases) and 69 C.J.S. *Party Walls* § 11b, p. 8 (1951).

¶ 15 We find by analogy this rule of law extends to easements in walls used, as here, for protection from the elements or fire. The cases holding that the owner of the servient tenement who removes a party wall must rebuild it are dependent upon a finding the wall removed was still sufficient for the purposes the owner of the dominant tenement had made of it. *See e.g., Commercial National Bank of Ogden v. Eccles,* 43 Utah 91, 134 P. 614 (1913). The facts of this case are to the contrary. Here, the public authority condemned the wall in question along with the building of which it was a part. Moreover, after the demolition work began a building inspector viewed the site and specifically deter-

mined the wall could not stand of its own accord and therefore must be removed. *See Childs v. Napheys*, 112 Pa. 504, 4 A. 488 (1886) (holding the decision of the building inspectors as to the sufficiency of party walls is a finality and if adjudged insufficient, a party wall must be taken down). Thus, it could no longer serve as a curtain wall. This situation is clearly distinguishable from a true party wall situation where the wall usually offers support to both structures through tie-ins to the wall. Under those circumstances if one of the buildings is accidentally destroyed, or even condemned, but the wall itself remains sufficient for the non-destroyed buildings purposes, then the argument the wall must remain or be rebuilt in a manner that will permit at least the same use previously enjoyed has much force. Here, however, aside from some inadvertent lateral support due to settlement, the Sobiens used the wall as a "curtain" or end wall to protect against fire and the elements. The wall itself was entirely upon the Mullin premises, and there were no structural tie-ins. Consequently, once the rest of Mullin's building was demolished the wall would surely have been in great danger of collapsing. Accordingly, the condemnation through no fault of Mullin rendered the wall useless to the Sobiens, and its destruction terminated the easement. The interest of the Sobiens as well as that of Mullin has been destroyed. The thing in which they both had a common interest is no longer useful to either. Under such circumstances each party must bear their own loss.

¶ 16 We find the case of *McKenna v. Eaton*, 182 Mass. 346, 65 N.E. 382 (1902), is a persuasive illustration that the lack of a duty to rebuild is equally applicable where, as here, the destruction results from condemnation. This case involved a double house that stood for over thirty years. The city board of health con-

demned the half owned by Eaton, and he demolished his half leaving McKenna's half without shelter or support. McKenna sued for damages alleging Eaton was responsible for replacing the support and shelter that came from Eaton's house. The trial court found Eaton was required to supply as good a support and shelter to McKenna's house as it had before. On appeal Chief Justice Holmes held that although McKenna had rights against Eaton, in the event of a voluntary destruction of the support furnished by the house torn down, he could not recover where the act was done under the valid direction of the board of health. The court stated: "we are of opinion that the plaintiff's rights were at an end, and that he stood no differently when the superior power by which the defendant's building was removed was the law, than he would have stood if it had been fire or an earthquake or time." *Id.* 182 Mass. at 348, 65 N.E. at 382.

¶ 17 The case of *In re State Fire Marshal*, 175 Neb. 66, 120 N.W.2d 549 (1963), is another similar case involving a party wall used for protection from the elements, which was demolished due to condemnation. In reversing the trial court's order directing the removing party to pay one-half the cost of tiling the exterior portion of the adjoining exposed wall the Nebraska Supreme Court held:

we are unable to find any reason, certainly no legal reason, why the owner of the east half, whose building is being ordered removed, should be required to contribute in any way to the cost of the tile wall. We therefore determine that the removal of the Company's portion of the building pursuant to an order of condemnation creates no obligation on its part to provide future protection for an interior division wall which became

an exterior wall for the portion of the building remaining.

*Id.* 175 Neb. at 78, 120 N.W.2d at 557. The court further opined:

> If one party does not desire to restore his building to a safe and sound condition for his own benefit, he should not be compelled to maintain it for the benefit of another in the absence of a specific agreement. Certainly then, he should not be required to provide an exterior wall where none existed previously and which wall will be a definite improvement of the remaining property.

*Id.* 175 Neb. at 77, 120 N.W.2d at 556.

¶ 18 Given the aforementioned authorities, we find Mr. Mullin did not owe the Sobiens a duty to protect their end wall from the elements. Therefore, he cannot be held liable for the costs associated with building an exterior finished wall and interior repairs. His only duty under the circumstances was to give notice of his intent to demolish and exercise reasonable care in demolishing his building so as not to add to the unstable condition of the exposed end wall. As noted in *Lexington Lodge, No. 24, F. & A.M. v. Beall,* 94 Miss. 521, 49 So. 833, 835 (1909):

> He is but exercising his legitimate rights of property. If it follow from this that the owner of the adjoining building will be put to inconvenience while the work of demolition ... is going on, this is an unavoidable consequence attendant upon the adoption and use of party walls.

From our review of the record the undisputed facts make clear the Sobiens had notice of the demolition work and Mr. Mullin's contractors acted with reasonable care and caution in demolishing his building. In fact the question of negligence was not even submitted to the jury because the Sobiens abandoned that claim. Rather, the trial court misinterpreted the applicable law and submitted the case to the jury on the following instruction:

> If you find that Plaintiffs' possessed a property interest in the wall in question and that the Defendant interfered with the Plaintiffs' property interest in the wall to the harm of the plaintiffs, then you must award damages to the Plaintiffs in the amount necessary to return the structure to its former condition.

N.T., 2/7/00, at 220. The effect of this instruction was to direct the jury to find Mullin liable for the mere removal of the wall if they were satisfied that the Sobiens had proven their claim of a prescriptive easement in the wall.

¶ 19 The trial court relied on the case of *McVey v. Durkin,* 136 Pa. 418, 20 A. 541 (1890) to support its denial of the motion for JNOV. In its opinion the trial court explained its reasoning as follows: "Because the party wall was created by prescription, the Sobiens obtained the right to continue to have the shelter that the wall provided to their home. Mr. Mullin was required to replace the party wall if he caused it to be removed." Trial Court Opinion, 9/11/00, at 5. Nothing in *McVey* requires the owner of a condemned building to replace a party wall. *McVey* merely held that if the owner chose to replace the wall and in doing so he went upon his neighbor's land to accomplish the task he would not be guilty of trespass. *McVey, supra.* *McVey* is inapplicable to the instant facts and the trial court's reliance thereon constitutes a clear error of law that controlled the outcome of the case. Since the record, as a matter of law, does not support recovery against Mr. Mullin we reverse the judgment and remand the case with directions to enter a judgment notwithstanding the verdict in conformity

with this opinion.[2]

¶ 20 Judgment reversed. Case remanded. Jurisdiction relinquished.

2. Since our resolution of this issue is determinative, we deem it unnecessary to address Appellant's remaining assignments of error.