GIMBEL BROS., INC.,

v.

MARKETTE CORPORATION and Don Tesauro, Appellants.

Nos. 13940, 13941.

United States Court of Appeals Third Circuit.

Argued June 8, 1962.

Decided July 13, 1962.

Jacob Kalish, Philadelphia, Pa. (Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., on the brief), for appellant, Markette Corporation.

S. Robert Levant, Philadelphia, Pa. (Murray H. Shusterman, Philadelphia, Pa., on the brief), for appellant, Don Tesauro.

Charles M. Solomon, Philadelphia, Pa. (Franklin A. Wurman, Philadelphia, Pa., Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellee was awarded a jury verdict for the agreed amount of the cost of restoring what the jury had found was a party wall straddling the property of the appellee and appellant, Markette Corporation. Appellant Tesauro was the contractor who had restored the wall. He had counterclaimed for the full amount of the repairs and for penalties incurred due to his late performance of his demolition of the wall contract with Markette. He received a jury verdict of $1500 for the cost of restoring those portions of the wall which the jury found had been removed at appellee's request.

Neither one of the appellants seriously disputes that the wall involved was erected as a party wall.[1] There was

---

1. Tesauro argues that the court should not have instructed the jury that a party wall could be created in this case by prescription. The objection is not that the law of prescription as outlined was misstated but that there was no trial evidence to support a finding to the effect the wall was created by prescription. The jury finding that the wall straddled the two properties eliminated the necessity of establishing plaintiff's easement in the wall by adverse use. See Pa.Act 1721, Feb. 24, 1 Smith's Laws 125, § 2 Title 53 Purdon's Pa.Stat.Ann. § 16663.

Additionally, the objection is not supported by the record. The witness, Stefaro, a City of Philadelphia surveyor and engineering aide, testified that the City's field notes regarding the two properties and the wall went back to 1907. From his own examination of the wall in 1957 he said, "The evidences were showing it very old." I. S. Fister, an employee of plaintiff since 1926 and before that an electrical foreman for L. K. Comstock, electrical contractor, was a trial witness. He said that prior to 1926 in his work for Comstock he had been connected with the tearing down of the old Gimbel two story building and the erection of the present structure on the site. He stated that the wall in this appeal is the same wall that then existed between the original Gimbel store and the adjoining property.

There was enough in the above evidence to support a claim by Gimbel of open, ad-

trial proof that it had existed for a great many years; that it was on both sides of the dividing line between the two properties; that up to 1926 plaintiff had used it to support its building; that in 1926 plaintiff erected a new building on its property with a wall of same against the party wall. That new wall was not enclosed in brick from a point two feet below the top of the party wall. The latter was thereafter used by plaintiff as a curtain wall protecting its new wall and the interior of the building from the weather, fire and like hazards. Markette acquired its building in 1956 and engaged Tesauro to demolish it. While Tesauro was doing so, Gimbel insisted that he stop. The municipality advised that the wall either had to come down or be tied to the Gimbel building. Gimbel and Markette agreed that Tesauro restore the wall, and fasten it to the Gimbel building. The cost of this was to abide judicial determination.

As we understand the argument of the appellants they concede that in demolishing the building and leaving the wall standing by itself, the latter was in danger of collapsing. Not only was Gimbel's about to lose its wall but it was such a public menace that the city ordered it taken down or tied into the adjacent Gimbel store wall. According to the defendants, whatever happened to the wall was no concern of theirs. They place their reliance on the theory that plaintiff, in depending on the wall for protection of the side of its building from the elements and fire but not for support of the roof of its building, etc., had released Markette from its obligation to do its share to maintain the party wall, in effect that the wall was no longer a party wall. The evidence is that the opposite Gimbel wall was so insubstantial that one could smell coffee through it. There is no evidence that it did not need the protection of its party wall. The assertion of the defendants

is that since the party wall was no longer the actual Gimbel store wall, plaintiff could not rely on it as a party wall.

■■■■ With this ancient party wall doctrine evolving and broadening through the years, there is ostensibly conflicting case law in Pennsylvania and other jurisdictions. But there is sound support for the doctrine enounced by the trial judge in his charge when he said, "* * * a party wall is a dividing wall between two buildings held in separate ownership which is used equally as an exterior wall for each. It is not necessary that such a wall be used to support the roof or floors of both buildings. It is enough that the wall be used as a curtain wall, protecting the buildings from the elements and protecting the spread of fire." This is very similar to the situation presented in Moye v. Morrison, 81 Pa.Super. 251 at page 257, (1923) where the court said: "It was not necessary, in order to involve a use of the wall contemplated by the statute, that the party wall should carry the weight of the new building: * * *". Markette does not mention that decision at all. Tesauro attempts to distinguish it and another of similar import, Pennsylvania Co. for Insurance on Lives, etc. v. Odd Fellows, 50 Pa.Super. 255 (1912), on the ground that "the defendants, though they had not used the walls for support had a right to do so in the future." What is completely lost sight of in that suggestion is the lack of any restriction to the Moye principle. Under it a party wall need not physically support a building or any part thereof. That is the Pennsylvania law controlling the situation before us. And with the support element out of the case, certainly the very real protection accorded the vulnerable Gimbel inside wall was reasonably within a use of a party wall contemplated by the statute. Moye opinion, supra. See also McVey v. Durkin, 136 Pa. 418, 20 A. 541 (1890); Neilson v. Hummel, 280 Pa. 483, 124 A.

verse and continuous use of the wall for twenty-one years and more, had it developed that the wall was entirely on Markette land. Bright v. Morgan, 218 Pa.

178, 67 A. 58 (1907); McVey v. Durkin, 136 Pa. 418, 20 A. 541 (1890). Under the jury's finding, the allusion to prescriptive right was harmless surplusage.

642 (1924). And it is clear under Pennsylvania law that "mere nonuse of an easement created by grant will not work an extinguishment of the easement no matter what the duration of the nonuser." Graham v. Safe Harbor Water Power Corporation, 315 Pa. 572, 575, 173 A. 311, 312 (1934); Werry v. Sheldon, 148 Pa.Super. 13, 18, 24 A.2d 631 (1942). The jury, confined to the restricted language of the interrogatory, did answer "Yes" to the question, "Has the plaintiff, Gimbel Bros., Inc. abandoned its use of the wall as a party wall * * * for the purposes of support?" What happened in fact was a non-use by Gimbel's of the wall for support from the time its new store was erected until now. Support for the wall is emphasized in its present tie-in to the Gimbel wall but it may well be that also some measure of support at least is given the particular Gimbel building wall by the joining of the walls. Though Markette objects to paying for the tie-in, there is no sign from it that it does not recognize Gimbel's right to use the wall, standing as the jury found, partly on Markette land. And even if the wall does not now furnish some physical support to the Gimbel building, it unquestionably does render it important protection and thus comes within the Pennsylvania party wall rule. Since those protection circumstances have existed from 1926 to and including the present time it seems to us that the language of the Pennsylvania Supreme Court in Thompson v. De Long, 267 Pa. 212, 216, 110 A. 251, 252, 9 A.L.R. 1326 (1920), was rightly held applicable by the district judge and that under the facts before us as the court in Thompson held " * * * plaintiff had an easement in defendant's part thereof which the latter could not destroy."

■ It is argued that the trial court erred in permitting R. G. Rennis to testify concerning the wall.

Mr. Rennis is a structural engineer. He graduated from Drexel Institute as a civil engineer; was an engineering officer in the United States Army for a period of four and a half years; since 1946 engaged in structural engineering itself; has designed over 200 buildings personally of all types, and at least another 200 under his supervision in his present company. He is registered as an engineer in Pennsylvania, New Jersey and New York. There was no question raised concerning his qualifications.

He said that in July of 1957 at the request of the plaintiff he made a survey of the wall to determine its status. He examined all the drawings in plaintiff's possession regarding it; examined the wall itself; went over the Philadelphia records pertaining to the wall back to 1906; had a survey made by District Survey No. 3 to determine the location of the deed line in the wall; went down the wall and saw the marks on it. From all of that he compiled his report from which he testified in detail. He found " * * * according to the present Philadelphia Building Code, the wall in question in our opinion is a party wall, since it projects on both sides of the party line, and since both lots are wider than sixteen feet." Objection was made " * * * to that conclusion that it is a party wall. That is a fact which the jury must determine, and they are in a better position or just as good a position as Mr. Rennis to determine whether it is a party wall or not from all the facts being presented before them, and I do not think Mr. Rennis can testify to that conclusion, that it is a party wall."

The trial judge said:

"I will explain to the jury that a party wall is a legal term, and I will define this to you at the end of the case, what constitutes a party wall; and it will be up to you ladies and gentlemen of the jury to determine, after considering all the evidence, whether or not on the basis of the elements that constitute a party wall as I define them to you whether or not this is a party wall; so Mr. Rennis is not in a position—and no witness is in a position—to decide whether this was a party wall in

this case. This is one of the issues for you to decide, you see.

"But he is entitled to say what he means by using the term 'party wall,' and I think he can state this, counsel, and the jury will remember that he is not entitled to decide what a party wall is, but he is entitled to say that he believes this is a party wall, and by a 'party wall' he will tell us what he means. He is not a lawyer. Are you?

"The Witness: No, sir.

"The Court: You do not know what the legal concept of a party wall is, do you?

"The Witness: Only by definition of the City Building Code.

"The Court: Well, if the City Building Code defines 'party wall,' you can tell us what that is.

"The Witness: All right, sir.

"The Court: And the jury is entitled to take that into consideration, also. But the party wall, ladies and gentlemen, for your purposes, that term will be defined by me. There are state statutes on this as well as the city ordinance on it.

"Go ahead. Tell us what the city ordinance says that apparently you are relying on in using the term.

"The Witness: Yes, sir. And the other—the point I would like to make at this time is that I am reading a report that is dated July 16, 1957, in which we expressed an opinion to the client as to our findings.

"The Court: We understand that, and we also understand that you are not a lawyer. Now, you say you are relying on a definition in the Philadelphia Building Code that was in there in 1957, was it?

"The Witness: Yes, sir.

"The Court: All right. What is it?

"The Witness: A party wall in the Philadelphia Building Code is defined as a wall that is used or adapted for use in common as a part of two buildings. There is a reference made to another section that devotes about a page and a half to that, but it is on that basis that we expressed our opinion at that time.

"The Court: In other words, when you use the term 'party wall,' you mean a wall which is used or adapted for use as part of two buildings?

"The Witness: That is correct, sir."

A little later on after the jury had been excused the judge, addressing counsel, stated as to Mr. Rennis:

"But he has written a report and he has used the term 'party wall,' and I will make clear to the jury, as I have, that this is a legal term, and that the definition in the ordinance is not the definition for legal purposes, and I think he is entitled to say the basis on which he used the term—as long as we make clear to the jury that that is not the basis for them to use in making their decision on the matter."

There was no objection ever noted to Mr. Rennis' reference to the Philadelphia Building Code as such.

In the charge the court commented on the Philadelphia ordinance and went on to give the jury the law of the case regarding the wall involved. He said:

"Now turning to the law. First of all there was some discussion here as to the definition of a party wall in the Philadelphia ordinance. I am going to give you the definition of a party wall which controls as to the rights and liabilities of the parties to the party wall, and the definition which is included in a city ordinance is for the purpose of the city's requiring people who are concerned with the wall that they call a party wall to do certain things under their police power. They have the right to require that certain inspections be made of the wall and that it be of certain strength and fire-resistant

material, and so on; so that definition, even though it is in the city ordinance, does not control us for the purposes of this case. Here we are concerned with the law which has grown up ever since 1721 in this state, the law passed by the Colonial Assembly before the time of our Revolution, which was adopted and carried on by our Legislature after the Revolution, which governs the rights between the two adjoining owners where there is a true party wall.

"Now, for the purposes that we are concerned with here, a party wall is a dividing wall between two buildings held in separate ownership which is used equally as an exterior wall for each. It is not necessary that such a wall be used to support the roof or floors of both buildings. It is enough that the wall be used as a curtain wall, protecting the buildings from the elements and protecting the spread of fire."

The objection now made by appellants is not that Mr. Rennis as a qualified expert could not give his opinion whether the wall was a party wall. No reference is made to that. The point as argued relies on the statement by the judge to counsel in discussing the interrogatories to be submitted to the jury. The judge said he did not think " * * * that [the Philadelphia Building Code] necessarily controls these purposes."

Therefore, say appellants Mr. Rennis had no right to use or mention the Philadelphia Building Code in testifying as to his conclusions concerning the wall. Mr. Rennis simply stated his opinion that according to the present Philadelphia Building Code the wall was a party wall and he went on to say why. He did not say that he could not be wrong in his interpretation of the Code (though no one pretends that he was) nor did he say that the Code was in any way controlling on the question here of what constituted a party wall. As we have seen, the trial judge made it plain as could be to the jury that the Building Code defi-

nition did not control and then he gave the jury the legal definition of party wall to be applied to the issue before it. That was the judge's responsibility and he fulfilled it properly. The definition, as we indicated earlier in this opinion, was in accord with Pennsylvania law.

The points regarding Special Interrogatory No. 3(a) and (b) with the court's instructions thereon and the court's comment on plaintiff's application for a building permit need no discussion. The district judge gave this difficult trial competent, thorough and meticulously fair consideration. We are satisfied from our own study of the record that it is free from substantial error.

The judgment of the district court will be affirmed.