J. A16041/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| 631 NORTH BROAD STREET LP, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 378 EDA 2018 |
| | : | |
| CONGREGATION RODEPH SHALOM | : | |

Appeal from the Judgment Entered December 28, 2017,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. April Term, 2016 No. 02632

BEFORE:  BENDER, P.J.E., LAZARUS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED APRIL 09, 2019**

631 North Broad Street, LP ("631 N. Broad") appeals from the December 28, 2017 judgment dismissing its actions for declaratory relief and quiet title and entering judgment in favor of Congregation Rodeph Shalom ("CRS") in this longstanding dispute over the parties' respective rights to a party wall (hereinafter, "South Wall") that straddles the property line separating their two lots.  The December 28, 2017 judgment declared, **_inter alia_**, that CRS was the legal owner of a portion of the South Wall and that 631 N. Broad is permanently enjoined from demolishing the South Wall, either completely or partially, without its consent.[1]  After careful review, we affirm.

---

[1] The December 28, 2017 judgment also dismissed CRS's counterclaims. (Final judgment order, 12/28/17 at 1-2, ¶¶ 3-7.)

The trial court summarized the relevant facts and underlying procedural history of this case as follows:

1.  [631 N. Broad] is a Pennsylvania limited partnership that owns real property located at 631 North Broad Street in Philadelphia.

2.  [CRS] owns real property at 619 North Broad Street. This property is immediately south and adjacent to 631 North Broad Street.

3.  [631 N. Broad] is redeveloping a brick structure that has occupied their lot on North Broad Street since the 1860s. Plans involve converting the existing building into residences while also preserving some historical portions of the building, primarily its original exterior brick walls. As part of its plan, [631 N. Broad] seeks to demolish a portion of the South Wall of the existing structure to open up light and air for several proposed apartments. These living spaces must be set back ten feet from the property line to comply with City of Philadelphia building codes. Without the partial demolition, windows of several proposed apartments as designed by [631 N. Broad's] architect would face a closed brick wall ten feet away.

4.  However, the South Wall lies directly over a property line separating both litigants' real estate. The South Wall extends approximately five inches over [CRS's] 619 North Broad Street property lot.

5.  The structure located at 631 North Broad was originally built to be a stable. It is unknown exactly when the stable was built, but we find construction took place during the Civil War era in the 1860's or years close in time either before or after the War. During this period, a relevant party wall statute allowed for the construction of party walls up to 6½ inches over a property boundary.

6. Sometime after the stable was constructed, a commercial bakery was built at the 619 North Broad Street property. It is unknown when the bakery's construction took place, but it is clear the bakery was in operation during the first half of the 20th Century. The bakery and the stable were physically attached along the South Wall until the bakery was demolished sometime in 1949 or 1950. After the bakery's demolition, the South Wall remained attached to the stable building. From the 1950s through the present time, no building on the 619 North Broad Street lot has physically adjoined the South Wall.

7. The South Wall as it exists today is three stories high and approximately 17 inches thick; approximately 5 inches of the wall are over the 619 North Broad Street side of the property line. It is unknown who originally constructed the South Wall but the evidence shows the South Wall was built to be used as a single structure---with a part of the South Wall over the 619 North Broad Street property line. The components of the South Wall were constructed at the same time and for use as a single wall.

8. [CRS] purchased 619 North Broad Street in 2009. At that time, the former stable on the property at 631 North Broad Street was being used as an art gallery and was not owned by [631 N. Broad]. Today, there is a one story building located on [CRS's] 619 North Broad Street lot and this building was used until recently as an early learning center for young children. The building is not used today for this purpose and children now attend classes at [CRS's] main building across Mt. Vernon Street. [CRS] moved the children out of the building on 619 North Broad Street for reasons that we find are not related to [631 N. Broad's] proposed plans for the South Wall.

9.    This existing one story building on the lot at 619 North Broad Street is separated from the South Wall by an alleyway.

10.   In 2011, the South Wall required repair due to falling brick and masonry. A dispute took place between [CRS] and [631 N. Broad's] predecessor owner of the 631 North Broad Street property. Neither wanted to pay for the repairs and a lawsuit ensued. This included pleadings by [CRS] denying ownership and responsibility for the South Wall. However, the litigation was settled and [CRS] paid $350,000 to masonry contractors to fix the South Wall's brickwork. This included adding new meshwork and a layer of stucco.

11.   After [631 N. Broad] introduced its plans for the 631 North Broad Street property to community and zoning authorities, [CRS] did not give consent to [631 N. Broad] for demolition of the South Wall, partial or complete.

12.   Ultimately[,] the dispute led to legal action on two fronts. The first was this case, filed by [631 N. Broad] in the Commerce Court[2] to quiet title and for issuance of a declaratory judgment. Later, [CRS] sought injunctive relief in this court to block demolition while this lawsuit remains pending. The second track involved zoning litigation in Philadelphia's Zoning Board of Adjustment ("ZBA"). On appeal to Common Pleas Court by [CRS] from an adverse decision by the ZBA, the zoning issues were ultimately decided in favor of [631 N. Broad] by this court and are not in litigation now.

---

[2] The Commerce Court "is a specialized civil program of the Trial Division of the Philadelphia County Court of Common Pleas" that handles commercial and business disputes that are not subject to the Compulsory Arbitration Program in the Court of Common Pleas of Philadelphia County. *See **Gior G.P., Inc. v. Waterfront Square Reef, LLC***, ___ A.3d ___, 2019 WL 178004, at *4 n.7 (Pa.Comm.Ct. January 14, 2019) (citation to website omitted).

13. After the zoning issues were decided in favor of [631 N. Broad], [the trial court] granted [a] preliminary injunction in favor of [CRS] to stay a demolition permit issued to [631 N. Broad] by Philadelphia's Department of Licenses and Inspection to take down the South Wall. The preliminary injunction was explained in a Memorandum Order dated March 1, 2017.

14. We find that if this court is reversed, [631 N. Broad's] demolition plans comply with Philadelphia's Department of Licenses and Inspections requirements to take the South Wall down safely, either partially or completely.

Trial court's "Findings of Fact and Conclusions of Law upon Completion of Trial Evidence," 10/30/17 at 1-4 (footnotes omitted).

The remaining procedural history of this case, as gleaned from the certified record, is as follows. On April 22, 2016, 631 N. Broad filed a complaint in equity against CRS that sought a declaratory judgment that it was the owner of the South Wall and, therefore, possessed a legal right to demolish it, as well as an action to quiet title. On May 24, 2016, CRS filed an answer and new matter, alleging a number of counterclaims that are not presently before this court. Thereafter, on November 17, 2016, CRS filed a motion for a preliminary injunction to prevent 631 N. Broad from demolishing the South Wall and utilizing its property for any construction activities. Following hearings on December 2 and 21, 2016, the trial court granted a preliminary injunction in favor of CRS and enjoined 631 N. Broad from

demolishing the South Wall without CRS's consent.[3]  (***See*** trial court order,

3/1/17 at ¶ 2.)  In a separate order entered that same day, the trial court

denied both counts of 631 N. Broad's complaint.[4]  On May 2, 2017, CRS filed

a motion to withdraw its counterclaims and requested entry of a final order

that included a permanent injunction.

Following a September 25, 2017 bench trial, the trial court entered an

order on October 30, 2017 permanently enjoining 631 N. Broad "from

demolishing **any** portion of the party wall between the properties located at

619 and 631 North Broad Street without the consent of [CRS]."  (Permanent

injunction order, 10/30/17 at ¶ 1 (footnote omitted; emphasis added).)  That

same day, the trial court issued findings of fact and conclusions of law in

support of its October 30, 2017 order.  (***See*** "Findings of Fact and Conclusions

of Law upon Completion of Trial Evidence," 10/30/17.)  On November 9, 2017,

631 N. Broad filed post-trial motions, which were denied by the trial court on

December 28, 2017.  That same day, the trial court entered final judgment in

favor of CRS, incorporating and adopting by reference its October 30, 2017

---

[3] The record reflects that 631 N. Broad appealed the trial court's entry of the preliminary injunction order in favor of CRS.  On April 20, 2018, a panel of this court granted CRS's motion to quash the appeal as moot because the trial court subsequently entered a final, permanent injunction based on a merits review of the same substantive issues raised in the preliminary injunction. ***See 631 North Broad Street, LP v. Congregation Rodef Shalom***, 190 A.3d 727 (Pa.Super. 2018) (unpublished memorandum at *1-4).

[4] 631 N. Broad appealed this order on March 24, 2017, but later withdrew its appeal.

findings of fact and concussions of law. (**See** final judgment order, 12/28/17 at 1 n.1).

Read in relevant part, the trial court's final judgment order included the following: (1) a declaration that "[CRS] is the legal owner of a portion of the South Wall, and [631 N. Broad] may not demolish the South Wall, **in its entirety or partially**, absent agreement or otherwise by the property owner of 619 North Broad Street, its assigns, heirs and successors[;]" and (2) a quiet title determination that CRS is "the owner, in fee simple, of a portion of the South Wall on 619 North Broad Street" and that CRS, "as the property owner of 619 North Broad Street . . . ha[s] easement rights for use of the South Wall as a party wall." (**Id.** at 1, ¶¶ 1-2 (emphasis added).) 631 N. Broad filed a timely notice of appeal on January 25, 2018.[5]

631 N. Broad raises the following four issues for our review:

> 1. Does CRS possess an ownership interest in a portion of the subject wall that prevents [631 N. Broad] from modifying the subject wall, partially or in its entirety, without CRS'[s] agreement where CRS did not build the wall and has not used it to support an attached building in almost 70 years?
>
> 2. Did CRS (or its predecessors-in interest) abandon any rights in the subject wall by: (a) failing to use the wall to support an attached building for almost 70 years; and (b) keeping the area immediately adjacent to the wall

---

[5] The trial court did not order 631 N. Broad to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). On February 28, 2018, the trial court filed its Rule 1925(a) opinion.

> vacant so it could be used as a driveway and later a playground?

> 3. May a trial court issue a preliminary injunction without hearing relevant evidence on all essential elements?

> 4. May a trial court condition a party's right to introduce relevant evidence at trial on whether the party withdraws appeals of the trial court's rulings entered in connection with a preliminary injunction hearing?

631 N. Broad's brief at 7.

Prior to addressing the merits of 631 N. Broad's claims, we must address CRS's contention at oral argument that 631 N. Broad's appeal is moot. Following oral argument, this court directed the parties to submit supplemental briefs to address this issue. (**See per curiam** order, 7/25/18.) The parties complied on August 15 and 26, 2018, respectively.

"As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot." **Warmkessel v. Heffner**, 17 A.3d 408, 412 (Pa.Super. 2011) (citation omitted), **appeal denied**, 34 A.3d 833 (Pa. 2011). Our supreme court has summarized the mootness doctrine as follows:

> [C]ases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way— changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that an actual case or controversy must be extant at all stages

> of review, not merely at the time the complaint is filed.

**William Penn Sch. Dist. v. Pennsylvania Dep't of Educ.**, 170 A.3d 414, 435 n.33 (Pa. 2017) (citations omitted).

> The concept of mootness focuses on a change that has occurred during the length of the legal proceedings. If an event occurs that renders impossible the grant of the requested relief, the issue is moot and the appeal is subject to dismissal.

**Warmkessel**, 17 A.3d at 413 (citations and internal quotation marks omitted).

Here, CRS contends that it has no interest, economic or otherwise, in the South Wall, and thus, no stake in the outcome of the instant litigation because it sold the 619 North Broad Street property to KFA Investment LLC ("KFA") on November 8, 2017, during the pendency of this action. (CRS's supplemental brief at 6-10.) CRS further avers that 631 N. Broad's appeal is moot because 631 N. Broad entered into an agreement with KFA on May 8, 2018 that allowed it to remove a portion of the South Wall. (**Id.**)

Relying, in part, on this court's decision in in **Jefferson Bank v. Newton Assocs.**, 686 A.2d 834 (Pa.Super. 1996),[6] 631 N. Broad counters

---

[6] **Jefferson** involved an owner of condominium units who claimed that the condominium association's appeal was moot because he had transferred the title of the units to third parties. **Jefferson**, 686 A.2d at 837-838. The **Jefferson** court concluded that the unilateral act of transferring title to a third party will not automatically render an appeal moot because Pennsylvania courts "have never held that an adverse party may create mootness through deliberate factual manipulation." **Id.** at 838.

that CRS's unilateral sale of 619 North Broad Street to a third party did not render its appeal moot. (631 N. Broad's supplemental brief at 5.) 631 N. Broad further contends that its removal of a portion of the South Wall pursuant to an agreement with KFA does not render its appeal moot because "the challenged decisions relate to the **entire** South Wall, a substantial portion of which remains standing[,]" and "the present dispute over title to and rights in the remainder of the South Wall presents a continuing controversy." (**Id.** at 3, 8-10 (emphasis added).) Additionally, 631 N. Broad avers that "[a] live controversy . . . exists with respect to the challenged injunction because that injunction continues in effect, preventing [631 N. Broad] from demolishing 'any portion' of the South Wall without the consent of the 619 Property owner." (**Id.** at 3-4.) 631 N. Broad notes that the modification agreement specifically provides that it only applies to the portion of the wall that was demolished and does not act as a limitation on the rights of ownership and control that 631 N. Broad believes it possesses and are at issue in this appeal. (**Id.** at 12.)

Upon review, we are not persuaded by CRS's contention that 631 N. Broad's appeal is moot. CRS did not simply render 631 N. Broad's appeal moot by transferring ownership to KFA. Furthermore, the fact that 631 N. Broad entered into a modification agreement with KFA to remove a portion of the South Wall does not render its appeal moot because a continuing controversy still exists with respect to the remaining portion of the

South Wall that is enjoined from being demolished. ***See***, ***e.g.***, ***Warmkessel***, 17 A.3d at 412. 631 N. Broad, as owner of one of the two properties which border the South Wall, clearly has a "necessary stake in the outcome" of this litigation because it remains subject to the permanent injunction precluding it from modifying the remaining portion of the South Wall without consent of 619 N. Broad Street's property owner, KFA. ***See William Penn Sch. Dist.***, 170 A.3d at 435 n.33. However, to the extent 631 N. Broad's claims concern CRS's ownership interest and/or alleged abandonment of its rights in the South Wall (***see*** 631 N. Broad's brief at 35-42), we find that these claims have been rendered moot by the fact that CRS no longer has any ownership interest in 619 N. Broad Street property. We now turn now to the merits of 631 N. Broad's remaining claims.[7]

## A. Grant of a Permanent Injunction

We begin by addressing 631 N. Broad's claim that the trial court erred in entering judgment in favor of CRS following the grant of a permanent injunction in the underlying equity action. (631 N. Broad's brief at 25.)

Our scope and standard of review in assessing whether a trial court erred in granting a permanent injunction is well settled. When an appellate court reviews the grant of a permanent injunction, its scope of review is

---

[7] For the ease of our discussion, we have elected to address 631 N. Broad's claims in a slightly different order than presented in its appellate brief.

plenary. ***Kuznik v. Westmoreland County Bd. of Comm'rs***, 902 A.2d 476,

489 (Pa. 2006). The grant or denial of a permanent injunction is a question

of law. ***Buffalo Township v. Jones***, 813 A.2d 659, 663-664 (Pa. 2002),

***cert. denied***, 540 U.S. 821 (2003). Thus, our standard of review is ***de novo***

and our inquiry concerns whether the trial court's legal determination that the

plaintiff established a clear right to relief, as a matter of law, was proper.

***Seven Springs Farm, Inc. v. Croker***, 801 A .2d 1212, 1216 n.1 (Pa. 2002),

***affirmed***, 801 A.2d 1212 (Pa. 2002). "To be entitled to a permanent

injunction, a party must establish a clear right to relief, and must have no

adequate remedy at law, ***i.e.***, damages will not compensate for the injury.

Unlike a preliminary injunction, a permanent injunction does not require proof

of immediate irreparable harm." ***Liberty Place Retail Assocs., L.P. v.***

***Israelite Sch. of Universal Practical Knowledge, et al.***, 102 A.3d 501,

506 (Pa.Super. 2014) (internal citations omitted).

Here, the trial court set forth the following reasoning in support of its

decision to grant a permanent injunction in this matter:

> A permanent injunction is appropriate because there
> is no adequate redress at law for [631 N. Broad's]
> proposed demolition, partial or total, of the party wall.
> Demolition would prevent [CRS] from complete
> enjoyment of its property right. This may include
> using the party wall for support or fire protection for
> a structure in the future. It is not possible for a court
> to assess specific monetary damages for the many
> types of repercussions of a demolition conducted
> without the other party's consent. Assessing such
> damages is speculative because there are multiple
> factors dependent on how [CRS] or a successor buyer

> uses the property. These variables are unknown and may include the cost of delay if the demolition of the party wall causes future zoning litigation over what may be built, and where, on the 619 North Broad Street lot. This potential for delay relates to whether zoning or other approvals will be necessary if the party wall is demolished and the owner of 619 North Broad Street then wants to build a structure that may impact [631 N. Broad's] planned condominiums which are below the height of the existing party wall.

Permanent injunction order, 10/30/17 at ¶ 1 n.1.

Upon review, and for the reasons discussed more fully below, we discern no error of law in the trial court's conclusion that there existed "no adequate remedy at law" for 631 N. Broad's proposed demolition. **Liberty Place Retail Assocs., L.P.**, 102 A.3d at 506. The trial court's grant of a permanent injunction in this matter was entirely appropriate.

## B. Declaration that the South Wall Constituted a Party Wall

631 N. Broad contends that the trial court erred in declaring that the South Wall constituted a party wall, a determination that serves as a foundation upon which the trial court's grant of permanent injunctive relief rests. (**See** 631 N. Broad's brief at 26-34.) In support of its contention, 631 N. Broad first argues that the record does not support the trial court's factual finding that "[i]t is unknown who originally constructed the South Wall[.]" (**Id.** at 26-28; **see also** "Findings of Fact and Conclusions of Law upon Completion of Trial Evidence," 10/30/17 at 2, no. 7.) 631 N. Broad avers that the South Wall was erected in conjunction with the stable

constructed on 631 North Broad Street property in 1866. (*Id.* at 12-13.) The record belies this contention.

It is well settled that "in all equity matters . . . we must accept the trial court's factual findings and give them the weight of a jury verdict where they are supported by competent evidence." *Thomas A. Robinson Family Ltd. P'ship v. Bioni*, 178 A.3d 839, 843 (Pa.Super. 2017) (citation omitted), *appeal denied*, 194 A.3d 560 (Pa. 2018).

> In *Buffalo Township*, [813 A.2d at 664 n.4], our Supreme Court clarified that the appellate standard of review of decisions granting or denying a permanent injunction is for an error of law. The [*Buffalo Township*] court, however, did not discard the longstanding principle that an appellate court must generally defer to a trial court's factual findings. *See id.* at 647 n.7 ("In reviewing fact-laden decisions, an appellate court displays a high level of deference to the trial court as the fact finder.").

*Liberty Place Retail Assocs., L.P.*, 102 A.3d at 506 n.4 (citation formatting corrected).

Here, we find that the evidence of record does not support 631 N. Broad's claim that the party wall was built at the time that the stable was constructed. During the December 2, 2016 hearing, CRS presented the testimony of Dr. Wing Chong Au ("Dr. Au"), an expert in the field of civil structural engineering. (Notes of testimony, 12/2/16 at 42-45.) Dr. Au testified that his review of an atlas map from 1860 depicting the 631 North Broad Street and 619 North Broad Street properties reveals that the South Wall existed before the construction of the stable in 1866:

A. The line to me is a party wall going from Broad Street all the way to Pemberton Street, and it shows on both sides of this building. It looks like there are row houses in this area, and this party wall is separating the building on the north side and also the building on the south side.

*Id.* at 48-49.

631 N. Broad next argues that because its predecessor in title constructed the South Wall, Pennsylvania law dictates that it owns the wall and the trial court erred as a matter of law in concluding that it was enjoined from demolishing it. (631 N. Broad's brief at 26-31, 35.) Based on this contention, 631 N. Broad maintains that the trial court's determination that the South Wall constituted a party wall is erroneous. (*Id.* at 26.) Again, we disagree.

In the instant matter, the trial court set forth the following "conclusions of law" in support of its October 30, 2017 permanent injunction order:

17. We conclude [CRS] prevails on the merits on declaratory judgment and in quiet title because the South Wall is a party wall which [CRS] owns in part and [631 N. Broad] owns in part. No owner may make an opening on a party wall without the other owner's consent.

18. The South Wall partially lies on [CRS's] side of the property line, a fact agreed by stipulation. For many years up to the demolition of the bakery in 1949 or 1950, the South Wall supported buildings belonging to owners on both sides of the property line.

19. Since acquiring ownership of the 619 North Broad Street lot, [CRS] has not abandoned its

rights to the wall as demonstrated by its repair of the South Wall in 2011.

20. [631 N. Broad] argues that it is entitled to quiet title and declaratory judgment on grounds that [CRS] has no property interest in the South Wall. [631 N. Broad] posits two grounds for its position. First is its claim that the South Wall is not a party wall. Second is its claim that even if the South Wall is a party wall, [CRS] has no remaining interest because the South Wall is no longer used for its original purpose. [631 N. Broad] argues the party wall belongs either to the property owner whose predecessor originally built the wall or to the owner of the surviving building when the adjoining building has been destroyed. None of these points is correct.

21. In reaching our conclusion, we first look to our own Commerce Court precedent. As U.S. District Judge C. Darnell Jones, II summarized when he served on Commerce Court, "A party wall sits between adjoining properties. Each property is servient to the service of the other with respect to the property wall. The primary factor in determining whether a wall is a party wall is the intent of the builder. Other factors include the wall's location with reference to the boundary line between adjoining properties . . . the understanding of the adjoining owners at the time it was built, and its use for a long number of years."

22. Ordinarily, a party wall is constructed upon the division line, and each adjoining lot owner has an easement on his neighbor's premises to assure the support and any other particular use that is made of the party wall. "It is not necessary that such a wall be used to support the roof or floors of both buildings. It is enough that the wall be used as a curtain wall, protecting the buildings from the elements and protecting the spread of fire."

23. The situation presented here raises the question what happens to the status of a party wall after its ordinary party wall uses are no longer applicable because of the demolition of one of the attached buildings?

24. Evidence established the South Wall was built as a party wall in accordance with relevant Pennsylvania statutes and Philadelphia ordinances authorizing builders to encroach over property lines when building party walls. Photo evidence also established actual use of the South Wall as a party wall for many years connecting the bakery and the stable. After the bakery was demolished, the South Wall was left standing and no evidence shows any of the subsequent 619 North Broad Street owners sold or otherwise devised their interest in the South Wall or the land on which the party wall lies.

25. Upon review, we conclude the South Wall remains a party wall today, even though it is presently not used for ordinary party wall purposes. We are persuaded that despite its lapsed use for ordinary party wall purposes, the wall lies over [CRS's] property line and [CRS] has not abandoned its maintenance of the wall. It is also unknown what use a developer on the 619 North Broad Street side may want to make of the South Wall in the future.

26. Again, it is undisputed that the property line between [631 N. Broad] and [CRS]'s properties runs beneath the wall. Approximately 5 inches are on the 619 North Broad Street side. There is no evidence of any express easements or covenants that affect the property status or use of the party wall in the event one of the adjoining buildings is demolished. Nothing states that ownership of the wall transfers to the lot owner who owns the last building standing. There is no easement running personally or with

the land that grants any special rights such as the privilege to break into the wall and create a hole or opening. And there is no evidence to this point that one party has contracted with the other to alter the legal status of the wall from party ownership to sole ownership. Nor is there evidence to this point that [631 N. Broad] has purchased [CRS's] land on which a part of the South Wall stands.

27. Accordingly, both [631 N. Broad] and [CRS] own the South Wall whether it is called a party wall, a joint wall or something else.

28. In this context and absent express agreements, we conclude that [CRS] is entitled to title recognition of its part ownership of the South Wall. We will therefore enter declaratory judgment in favor of [CRS] and [631 N. Broad] is permanently enjoined from demolishing the South Wall, either completely or partially, without the other owner's consent.

"Findings of Fact and Conclusions of Law upon Completion of Trial Evidence," 10/30/17 at 4-8 (footnotes omitted).

Following our careful and independent review of the record, we find that both the evidence of record and long-standing case law of this Commonwealth supports the trial court's determination that the South Wall constituted a party wall. In *Sobien v. Mullin*, 783 A.2d 795 (Pa.Super. 2001), a panel of this court summarized what constitutes a "party wall" in Pennsylvania:

Party wall rights did not exist at common law. Rather, such rights are granted to adjoining landowners by statute, contract or prescription. Ordinarily, a party wall is constructed upon the division line, and each adjoining lot owner has an easement on his neighbor's premises for the support or extent of use made of the party wall. Where a wall is built completely on the

land of the builder, without the intention to give it the quality of a party wall, it is a division wall, and the laws regulating party walls do not apply to it. A party wall has also been defined as follows:

A party wall may be defined generally as a wall located upon or at the division line between adjoining landowners and used or intended to be used by both in the construction or maintenance of improvements on their respective tracts, or, more briefly, as a dividing wall for the common benefit and convenience of the tenements which it separates. The term 'wall in common,' as sometimes used, has the same meaning as party wall. A distinctive feature of a party wall is that the adjacent buildings are so constructed that each derives its support from the common wall. Thus, where each of two persons is seised of a specified half of a wall and nothing more, and no right of support or shelter has been acquired by the one from the other, such a wall is not a party wall.

However, such a division wall may take on the character of a party wall by prescriptive use.

**Sobien**, 783 A.2d at 798 (internal citations and quotation marks omitted).

Here, under the facts presented, we agree with the trial court that the wall in question was a party wall as contemplated by the courts in this Commonwealth. Our supreme court has held that one of the key characteristics of a party wall is that it straddles or crosses the adjoining property line. **See Lukens v. Lasher**, 51 A. 887, ___ (Pa. 1902) (stating, "[a] party wall is a wall erected on the line between two adjoining estates belonging to different persons, for the use of both estates." (citation and

internal quotation marks omitted)). Here, neither party disputes that the South Wall lies directly over the property line separating 631 North Broad Street and 619 North Broad Street. ("Findings of Fact and Conclusions of Law upon Completion of Trial Evidence," 10/30/17 at 2, No. 4; *see also* notes of testimony, 12/2/16 at 50.) Other important factors in determining whether a wall is a party wall include "[t]he location of a wall with reference to the boundary line between two adjoining properties[,] . . . [t]he intent of the builder, the understanding of the adjoining owners at the time it was built, and its use for a long number of years[.]" *McClernan v. Greenberg*, 182 A. 59, 61 (Pa.Super. 1935). Here, two 1950 surveys introduced into evidence and examined by expert Dr. Au depict a party wall that had metal tie-ins between the second floor joists of the 631 North Broad Street property and the roof joists of the 619 North Broad Street property. (Notes of testimony, 12/2/16 at 49-51; *see also* Exhibits 3B and 3C.) Additionally, an atlas from 1860 depicts the party wall at issue, as described in the expert testimony of Dr. Au. (Notes of testimony, 12/2/16 at 48-49.) Lastly, the record reflects that in 2011, CRS spent over $350,000 to repair its side of the South Wall's brick and masonry. ("Findings of Fact and Conclusions of Law upon Completion of Trial Evidence," 10/30/17 at 3, No. 10.)

631 N. Broad would have this court disregard the longstanding precedent of this Commonwealth with respect to party walls; we decline to do so. Accordingly, for all the foregoing reasons, 631 N. Broad's contention that

the trial court erred in declaring the South Wall a party wall and permanently enjoining 631 N. Broad from demolishing it, either completely or partially, without consent of the 619 Broad Street property owner, must fail.[8]

## C.    The Propriety of the Preliminary Injunction

631 N. Broad next contends that the trial court's erroneous determination that the South Wall constituted a party wall requires that we address the propriety of the preliminary injunction that enjoined its demolition of the South Wall.  (631 N. Broad's brief at 42-44.)  However, because we have already determined that the trial court did not err in concluding that the South Wall constituted a party wall, we need not address this issue.

---

[8] 631 N. Broad cites, *inter alia*, *Roberts v. Bye*, 30 Pa. 375 (Pa. 1858), and *Appeal of Masson*, 70 Pa. 26 (1871), in support of his claim that the South Wall is not a party wall.  (631 N. Broad's brief at 27, 29.)  We agree with the trial court's reasoning that these cases are distinguishable from the case *sub judice*:

> These cases are cited for the proposition that the party who built the wall is entitled to sole ownership of a party wall if the other party has not paid his share of the costs of the wall's construction.  This involves a different legal issue than reviewed here.  Over two days of testimony, no evidence was presented on whether the construction costs of the South Wall were paid, or not, by the adjoining landowner and no evidence was offered conclusively as to who put up the wall and when.  As the South Wall's initial construction costs are not in evidence, neither *Roberts v. Bye* nor [*Appeal of Masson*] is helpful.

"Findings of Fact and Conclusions of Law upon Completion of Trial Evidence," 10/30/17 at 10, No. 34 (footnotes omitted).

Furthermore, 631 N. Broad has already appealed the trial court's entry of the preliminary injunction order. As noted, a panel of this court quashed the appeal because the preliminary injunction merged into the final permanent injunction order the trial court entered involving the same substantive issues. *See 631 North Broad Street, LP v. Congregation Rodef Shalom*, 190 A.3d 727 (Pa.Super. 2018) (unpublished memorandum at *4). Thus, this court finds no reason to revisit the preliminary injunction order.

### D.    Judicial Bias

In its final claim, 631 N. Broad argues that it was deprived of due process because Judge Ramy I. Djerassi was biased against it and "decided early on that he would rule in CRS' favor." (631 N. Broad's brief at 48.) In support of this contention, 631 N. Broad cites to Judge Djerassi's "roots connecting him to CRS" and construes the September 25, 2017 proceedings as a "sham trial." (*Id.* at 48-49.) 631 N. Broad also takes issue with a number of evidentiary rulings Judge Djerassi made in favor of CRS at the December 21, 2016 hearing. (*Id.* at 49.) These claims are both waived and devoid of merit.

It is well settled that "a party may not raise the issue of judicial prejudice or bias for the first time in post[-]trial proceedings." *Ware v. U.S. Fid. & Guar. Co.*, 577 A.2d 902, 905 (Pa.Super. 1990) (citations omitted). On the contrary, "a party seeking recusal or disqualification on the basis of judicial

bias or impartiality "[is required] to raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred." *In re Lokuta*, 11 A.3d 427, 437 (Pa. 2011) (citations omitted; brackets in original), *cert. denied*, 565 U.S. 878 (2011).

Instantly, the record reflects that at the commencement of the December 2, 2016 hearing, Judge Djerassi disclosed his connection to CRS and indicated he could be impartial:

> I will advise you that I have had a relationship with [CRS] throughout my life in that I went to Hebrew school there and was [a] bar mitzvah there, but I have not been a member of [CRS] myself since [a]ge 18. I have made, through a family foundation, a contribution to [CRS] on behalf of my mother who is a member of [CRS], but I am not; therefore, I believe that I am not prejudiced one way or another as far as there being some kind of conflict in this matter. I am a member of three synagogues. None of them are [CRS].

Notes of testimony, 12/2/16 at 4-5.

631 N. Broad's counsel did not move to disqualify Judge Djerassi on this basis, and, in fact, indicated on 631 N. Broad's behalf that, "Your Honor, we're satisfied." (*Id.* at 5.) Because 631 N. Broad failed to raise its claim of judicial bias at the earliest possible opportunity, it is waived. *See* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Furthermore, we recognize that an appellant's "mere recitation of unfavorable rulings against [it]," as 631 N. Broad's does in the instant matter,

"does not satisfy the burden of proving judicial bias, prejudice or unfairness."

*Ware*, 577 A.2d at 904 (citation omitted). Likewise, our independent review of the September 25, 2017 transcript reveals no support for 631 N. Broad's contention that the trial was in any way a "sham," and its claim to the contrary is disingenuous. Accordingly, as the issues that 631 N. Broad has raised do not provide a scintilla of evidence that Judge Djerassi was biased against it, we would reject these claims.

For all the foregoing reasons, we affirm the December 28, 2017 judgment.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/19

- 24 -