J-A27032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KENNETH KRAMER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERDIS HENNIGAN, ADMINISTRATRIX | : | No. 644 EDA 2021 |
| OF THE ESTATE OF CARLOS | : | |
| COLDING | | |

Appeal from the Judgment Entered March 25, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): No. 180400496

BEFORE: PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 14, 2022**

Appellant, Kenneth Kramer, appeals from the March 25, 2021 entry of Judgment in favor of Appellees, Erdis Hennigan ("Ms. Hennigan") and the Estate of Carlos Colding, following a non-jury trial in this action alleging property damage, defamation, tortious interference with contractual relations, and fraudulent transfer in violation of the Pennsylvania Uniform Voidable Transaction Act ("PUVTA"), 12 Pa.C.S. §§ 5101-14. After careful review, we affirm.

The relevant facts and procedural history are as follows. Appellant is a real estate investor who owned, among other properties, 3845 Hamilton Street, a rowhome in the Powelton Section of West Philadelphia. Appellant's property was next-door to 3843 Hamilton Street, a property owned by Carlos Colding ("Mr. Colding"). Appellant's property was a three-story, multi-unit

dwelling that Appellant used as a rental property. Mr. Colding's property was a single-family home where he lived with his mother. The men had an amicable relationship through December 2017.

On February 4, 2018, the tenants in Appellant's building heard someone walking on the building's roof and noises in the building's drainpipes. One of the tenants, Daniel Carr ("Mr. Carr"), recognized Mr. Colding on the second-floor roof. Another tenant, Nicholas Pingree ("Mr. Pingree"), reported having water invading his apartment through the ceiling. Following this incident, Appellant retained roofers, Erik Kramer ("Mr. Kramer") and Kevin Elder ("Mr. Elder"), to fix the roof. Mr. Kramer reported that sections of the roof were missing and observed cracks and holes in the third-floor roof, and cans and bricks in the drainpipes.

Around the same time, Appellant's tenants reported that someone had been dumping feces and urine on Appellant's property. They also observed anti-Semitic posters and stickers hung on the front door of Mr. Colding's home that falsely accused Appellant and his wife, Marie Kramer ("Mrs. Kramer"), of committing crimes.

On February 5, 2018, Mrs. Kramer dropped off a note at the home of Ms. Hennigan, Mr. Colding's sister, describing Mr. Colding's conduct, his apparent mental health problems, and the property damage he had caused.

Mrs. Kramer explained that Mr. Colding's conduct had resulted in Appellant and Mrs. Kramer filing at least six police reports.[1]

On April 2, 2018, Mr. Colding was involuntarily committed for inpatient mental health treatment after firefighters climbed through a window and took him to Mercy Philadelphia Hospital Mental Health Facility. Mr. Colding remained in the hospital until April 20, 2018. Following his release from the hospital, Mr. Colding lived with Ms. Hennigan, although he returned home frequently.

On April 4, 2018, Appellant filed a Complaint initiating the instant matter against Mr. Colding and Ms. Hennigan. The Complaint included counts asserting liability for property damage at Count I and defamation and negligence at Count II.

On April 13, 2018, while Mr. Colding was still involuntarily committed for mental health treatment, Ms. Hennigan executed a Power of Attorney document on Mr. Colding's behalf. That same day, Mr. Colding prepared a draft deed transferring ownership of 3843 Hamilton Street to Ms. Hennigan for $1.00. The deed transferring ownership was executed and recorded on May 4, 2018.

On April 18, 2018, Ms. Hennigan learned that a criminal matter against Mr. Colding was scheduled for a hearing the following day. Ms. Hennigan attended the hearing and spoke briefly to Appellant, who was also present at

---

[1] In addition to sending this letter to Ms. Hennigan, Mrs. Kramer later spoke with Ms. Hennigan on the phone about the issues raised in the note.

- 3 -

the hearing. Appellant did not inform Ms. Hennigan that he had filed the instant lawsuit against her and Mr. Colding when they met in criminal court that day. Rather, Ms. Hennigan became aware of the claims pending against her and Mr. Colding for the first time on April 19, 2018, when Appellant served Ms. Hennigan with a copy of the Complaint.[2]

On October 3, 2018, Appellant filed, with leave of court, a five-count Second Amended Complaint against Mr. Colding and Ms. Hennigan (collectively, "Defendants"). Appellant reasserted his property damage and defamation claims against Mr. Colding individually and added a claim of tortious interference with contractual relations against him.[3] Appellant also included in the Complaint two counts asserting that both defendants had violated Sections 5104(a)(1), 5104(a)(2), and 5105 of the PUVTA when they transferred ownership of Mr. Colding's home to Ms. Hennigan in bad faith, without exchange of reasonably equivalent value, causing Mr. Colding to become insolvent, and with the alleged intent to hinder, delay, or defraud Appellant as a creditor of Mr. Colding.

---

[2] The lower court docket reflects that Appellant unsuccessfully attempted to serve Ms. Hennigan with the Complaint on April 13, 2018, April 15, 2018, and April 16, 2018.

[3] Appellant withdrew his tortious interference with contractual relations claim in his November 16, 2020 post-trial memorandum. **See** Trial Memorandum, 11/16/20, at 2.

On November 8, 2018, Mr. Colding filed an Answer and New Matter. On November 13, 2018, Appellant filed a Reply to Mr. Colding's new matter. On December 17, 2018, Ms. Hennigan filed an Answer.

On June 17, 2019, Mr. Colding transferred ownership of a property located at 3855 Lancaster Avenue to Ms. Hennigan for $1.00. Mr. Colding died approximately one month later.[4]

On October 29, 2020, the matter proceeded to a bench trial at which Appellant presented his own testimony as well as that of Mrs. Kramer, roofers Mr. Kramer and Mr. Elder, tenants Mr. Carr and Mr. Pingree, and Ms. Hennigan as on cross. Defendants presented the testimony of Ms. Hennigan and George Bankhead, the father of Ms. Hennigan's daughter. Relevant to this appeal, Mr. Bankhead's testimony provided additional details of Mr. Colding's behavior. Mr. Bankhead also testified that, as early as 2017, Mr. Colding was not able to pay his property taxes and that, at that time, Ms. Hennigan considered transferring ownership of 3843 Hamilton Street to herself and paying the taxes due.

Following the bench trial, the court entered a verdict of $50,000 in favor of Appellant on his property damage and defamation claims against Mr. Colding's estate. Relevantly, the trial court found that Mr. Colding damaged

---

[4] On August 22, 2019, Mr. Colding's counsel informed the court and Appellant of Mr. Colding's death by filing a Notice of Death. On October 7, 2020, Appellant filed a *Praecipe* to Amend Caption to substitute Mr. Colding's estate, represented by the estate's administratrix Ms. Hennigan, as a party.

the third-floor roof of 3845 Hamilton Street, and that Appellant failed to prove that Mr. Colding damaged the property's second-floor roof.[5] The trial court also found that Mr. Colding defamed Appellant.[6] With respect Appellant's PUVTA claims, the trial court found that: (1) Ms. Hennigan did not have any knowledge of Appellant's claims against her until she received Appellant's Complaint on April 19, 2018, thus, Mr. Colding and Ms. Hennigan transferred 3843 Hamilton Street without prior knowledge of the lawsuit; (2) Ms. Hennigan began considering transferring ownership of 3843 Hamilton Street to herself in at least 2017; and (3) Appellant failed to present any evidence that he had any claim against Ms. Hennigan, or that she is liable to or owes any debt to Appellant.[7] The court, thus, concluded that Ms. Hennigan and Mr. Colding did not transfer ownership of 3843 Hamilton Street to Ms. Hennigan for the purpose of defrauding Mr. Colding's creditors, including Appellant.[8] Accordingly, the court dismissed with prejudice Appellant's PUVTA claims.[9]

Appellant filed a timely post-trial motion essentially seeking judgment notwithstanding the verdict ("JNOV"), in which he asserted, *inter alia*, that the trial court erred in permitting Mr. Bankhead to testify when the Defendants

---

[5] Findings of Fact and Conclusions of Law, 12/2/20, at 2-3.

[6] *Id.* at 3.

[7] *Id.* at 4-5, 7-10.

[8] *Id.* at 10.

[9] Order, 12/7/20.

did not identify him as a witness in their responses to Appellant's interrogatories or pretrial memorandum, in contravention of Pa.R.C.P. 4019(i). Appellant also claimed that the court improperly admitted into evidence documents that the Defendants did not authenticate or formally move into evidence, improperly admitted portions of Ms. Hennigan's testimony, and failed to consider Mr. Colding's competency when he executed the deed transferring 3843 Hamilton Street to Ms. Hennigan. On March 10, 2021, the trial court denied Appellant's post-trial motion.

This appeal followed.[10, 11] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the [t]rial [c]ourt abused its discretion and erred as a matter of law when it found that the conveyance of two (2) properties owned by [Mr. Colding] worth hundreds of

---

[10] Appellant filed his notice of appeal prior to filing a *praecipe* for entry of judgment on the verdict. An appeal properly lies from entry of judgment and not the denial of a post-trial motion. **Harvey v. Rouse Chamberlin, Ltd.**, 901 A.2d 523, 524 n.1 (Pa. Super. 2006). In any event, Appellant's premature notice of appeal does not affect our jurisdiction as the lower court clerk entered judgment on the docket on March 25, 2021. **See Sobien v. Mullen**, 783 A.2d 795, 797 n.1 (Pa. Super. 2001) (reiterating that, where an appellant prematurely files a notice of appeal from an interlocutory order, appellate jurisdiction is perfected when a final appealable order is entered); **see also** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

[11] Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) Statement. The trial court did not file a responsive opinion.

thousands of dollars to his sister [Ms. Hennigan], for $1.00 each did not violate the [PUVTA]?

2. Whether the [t]rial [c]ourt's findings of fact were unsupported by substantial, competent evidence and whether it erred as a matter of law when it found that the conveyances were not fraudulent under the PUVTA because [Mr.] Colding did not possess actual intent to hinder, delay[,] or defraud a creditor ([Appellant]) when he conveyed certain real estate to his sister ([Ms.] Hennigan)?

3. Did the [t]rial [c]ourt err in concluding that [Mr.] Colding did not become insolvent as a result of the transfers or that he did not retain possession of the properties after the transfers?

4. Whether the [t]rial [c]ourt erred in not voiding the conveyances of the two properties by [Mr.] Colding to [Ms.] Hennigan where no reasonably equivalent value was given?[12]

5. Whether the [t]rial [c]ourt erred in not voiding the conveyances of two properties by [Mr.] Colding to [Ms.] Hennigan because [Mr.] Colding lacked capacity due to mental illness?[13]

6. Whether the [t]rial [c]ourt erred in admitting certain evidence at trial, including exhibits which were never authenticated or moved into evidence, allowing witness [Mr.] Ba[n]khead to testify over objection were he had not been properly identified in advance of trial, and admitting prejudicial hearsay testimony?

7. Whether the [t]rial [c]ourt erred in awarding only $50,000.00 (with no legal fees) to [Appellant] when his damages far exceeded this amount?

Appellant's Brief at 7-8.

_____

[12] Appellant has not included in his brief an argument section corresponding with this issue presented. Accordingly, we find that Appellant has abandoned it.

[13] Appellant has not included in his brief an argument section corresponding to this issue. Thus, we conclude that he has abandoned it and we will not address it.

**Standard of Review**

Appellant challenges the trial court's verdict after a non-jury trial. Our standard of review is, thus, well-settled. "We may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. As fact finder, the judge has the authority to weigh the testimony of each party's witnesses and to decide which are most credible." ***Parker Oil Co. v. Mico Petro and Heating Oil, LLC***, 979 A.2d 854, 856 (Pa. Super. 2009) (citation and brackets omitted). The trial judge's findings must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not supported by competent evidence in the record. ***Levitt v. Patrick***, 976 A.2d 581, 589 (Pa. Super. 2009). "Furthermore, our standard of review demands that we consider the evidence in the light most favorable to the verdict winner." ***Id.*** (citation omitted).

We review the denial of a post-trial motion requesting JNOV for an error of law that controlled the outcome of the case or an abuse of discretion. ***Hutchinson v. Penske Truck Leasing Co.***, 876 A.2d 978, 984 (Pa. Super. 2005). In this context, an "[a]buse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." ***Id.***

When reviewing the denial of a request for JNOV, the appellate court examines the evidence in the light most favorable to the verdict winner.

*Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 569 (Pa. Super. 2006). Thus, "the grant of [JNOV] should only be entered in a clear case[.]" *Id.* (citation omitted). "Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed." *Holt v. Navarro*, 932 A.2d 915, 919 (Pa. Super. 2007) (citation omitted). Our scope of review over questions of law, however, is plenary. *Buckley v Exodus Transit & Storage Corp.*, 744 A.2d 298, 305 (Pa. Super. 1999).

There are two bases upon which a movant is entitled to JNOV: "one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Rohm and Haas Co. v. Continental Cas. Co.*, 781 A.2d 1172, 1176 (Pa. 2001) (citation omitted). When an appellant challenges a verdict on this latter basis, we will grant relief only "when the [] verdict is so contrary to the evidence as to shock one's sense of justice." *Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.*, 126 A.3d 959, 967 (Pa. Super. 2015) (citation omitted).

**The PUVTA**

Appellant brought claims against Mr. Colding and Ms. Hennigan alleging that their property transfers violated Sections 5104(a)(1), 5104(a)(2), and 5105 of the PUVTA. Section 5104 provides, in relevant part, that a transfer made by a debtor is voidable if the debtor made the transfer with actual intent

to hinder, delay, or defraud any of his creditors or without receiving a reasonably equivalent value in exchange for the transfer. 12 Pa.C.S. §§ 5104(a)(1), (a)(2). In determining "actual intent" under Subsection (a)(1), the trial court may consider, among other factors, whether: (1) the transfer was to an insider; (2) the debtor retained possession or control of the property after the transfer; (3) the transferor concealed the transfer; (4) the transferor had been sued or threatened with suit before the transfer was made; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor became insolvent as a result of the transfer; and (7) the value of consideration given for the transfer was reasonably equivalent to the value of the property transferred. *Id.* at § 5104(b).

Appellant also raised a related claim under Section 5105, which provides, in relevant part, that a "transfer made . . . by a debtor is voidable as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving reasonably equivalent value in exchange for the transfer . . . and the debtor . . . became insolvent as a result of the transfer[.]" *Id.* at § 5105(a). A creditor seeking relief under subsection (a) bears the burden of proof by a preponderance of the evidence. *Id.* at 5105(b).

**Appellant's Issues**

Appellant's first question presented asks this Court to determine whether the trial court erred in concluding that the property conveyances from Mr. Colding to Ms. Henngian did not violate the PUVTA. Appellant's Brief at 7.

- 11 -

However, the argument presented by Appellant to support this alleged claim of error is wholly unrelated to the issue presented. *Id.* at 27-29. Instead, Appellant's argument merely consists of a restatement of the facts of record that supported his claim—and the trial court's conclusion in his favor—that Mr. Colding committed acts of property damage and defamation against Appellant. *Id.* The failure to address the PUVTA itself with reference to the relevant language of the statute or citation to any case law with discussion and application of the relevant facts violates Pa.R.A.P. 2119. *See* Pa.R.A.P. 2119(a) (requiring a developed appellate argument to include "discussion and citation of authorities as are deemed pertinent"). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where a party has failed to cite any authority in support of a contention." *Karn v. Quick & Reilly, Inc.*, 912 A.2d 329, 336 (Pa. Super. 2006) (citation omitted). Because Appellant has not presented any argument relevant to his first question presented, we decline to address it.

In his second issue, Appellant asserts that the trial court erred in not voiding the 3843 Hamilton Street conveyance because Mr. Colding lacked capacity, pursuant to 20 Pa.C.S. § 5501,[14] to transfer it. Appellant's Brief at

_____

[14] Section 5501 defines an incapacitated person as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any
*(Footnote Continued Next Page)*

29-33. In support, Appellant baldly asserts that Mr. Colding was "insane" and concludes that "[a]n insane person is incapable of making a contract." *Id.* at 30.

This Court's review of Appellant's Amended Complaint and his Answer to the Defendants' New Matter indicates that Appellant did not assert a claim seeking to void the conveyance on the grounds of Mr. Colding's purported lack of legal capacity. Moreover, our review of the Notes of Testimony from the bench trial indicates that Appellant did not present any evidence pertaining to Mr. Colding's capacity at the time of the transfer and, in fact, Appellant's counsel conceded at trial that Mr. Colding "wasn't declared incompetent . . . at the time of the transfer as far as I know." N.T., 10/29/20, at 299. Accordingly, the trial court did not err in not voiding the 3843 Hamilton Street conveyance based on Mr. Colding's alleged lack of capacity.

In his third issue, Appellant asserts that the trial court erred in concluding that the 3855 Lancaster Avenue transfer did not render Mr. Colding insolvent. *Id.* at 34, 50. Appellant also claims that the court erred in finding that: (1) Mr. Colding did not retain possession of the 3843 Hamilton Street property after he transferred it to Ms. Hennigan in April 2018; and (2) Appellant lived with Ms. Hennigan because Ms. Hennigan testified that Mr.

way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501.

Colding "moved back and forth from 3843 Hamilton to 3855 Lancaster," neither of which was Ms. Hennigan's residence. *Id.* at 34, 56.

With respect to Appellant's first claim, the trial court found that "Carlos Colding was not rendered insolvent as a result of the transfer of 3843 Hamilton Street[]" because even after transferring that property he "continued to have ownership in 3855 Lancaster Avenue[.]"  Findings of Fact and Conclusions of Law ("FFCL"), 12/2/20, at 8.  The record supports this finding.

The court then found that whether Mr. Colding's transfer of 3855 Lancaster Avenue more than one year later rendered him insolvent was "unclear to th[e] [c]ourt."  *Id.*  The court explained that although Appellant had presented evidence at trial that Mr. Colding had also owned a property on Brandywine Street, he did not also present evidence that Mr. Colding no longer owned that property when he transferred 3855 Lancaster Avenue.  *Id.* at 8-9.  Therefore, if Mr. Colding still owned the Brandywine Street property when he transferred 3855 Lancaster Avenue to Ms. Hennigan, the 3855 Lancaster Avenue transfer would not have rendered Mr. Colding insolvent.  The record also supports this finding.  Simply, in the absence of evidence demonstrating that Mr. Colding had no remaining assets after he transferred 3855 Lancaster Avenue, the court concluded that Appellant did not meet his burden of proof that this transfer rendered Mr. Colding insolvent.  We agree.

With respect to Appellant's claim that the court erred in finding that Mr. Colding did not retain possession of 3843 Hamilton Street after he transferred it in April 2018, the evidence of record reflects that after Mr. Colding's

- 14 -

involuntary commitment in 2018, he never again lived at 3843 Hamilton Street. *See* N.T. at 151-52 (where Ms. Hennigan testified repeatedly when questioned by both counsel and the court that Mr. Colding lived at 3855 Lancaster Avenue after he left the mental health facility). The trial court found Ms. Hennigan's testimony credible and we will not disturb the court's credibility determination. Accordingly, Appellant's claim is without merit and he is not entitled to relief.[15]

In his sixth issue, Appellant purports to challenge certain of the trial court's evidentiary rulings.

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion. *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014). We will not overturn such a ruling absent an abuse of discretion or misapplication of law. *Id.* "In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." *Id.* (citation omitted).

Appellant first avers that the trial court erred in admitting the testimony of Mr. Bankhead when the Defendants: (1) did not identify him as a witness

_____

[15] In support of his third issue, Appellant presents a rambling argument that spans nearly 30 pages of his appellate brief. *See* Appellant's Brief at 33-60. To the extent that Appellant presents argument in support of numerous issues not fairly suggested by the issue presented, *i.e.*, whether the court erred in finding that the property transfers did not render Mr. Colding insolvent and in finding that Mr. Colding retained possession of the properties he transferred to Ms. Hennigan, we decline to consider them. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

until three days before trial in violation of Pa.R.C.P. 4019(i);[16] and then (2) disingenuously mischaracterized him as a mere "acquaintance" of Ms. Hennigan's; and (3) misleadingly identified Mr. Bankhead's testimony as relating to conversations which occurred in Spring 2018, rather than in Spring of 2017 as Mr. Bankhead actually testified. Appellant's Brief at 60-62. Appellant baldly claims that this "lack of candor" and refusal to comply with Rule 4019 "is outrageous and was unfairly prejudicial to" him. *Id.*

Beyond baldly asserting that the late notice and alleged mischaracterization of Mr. Bankhead's relationship to Ms. Hennigan and the substance of his testimony prejudiced him, Appellant has not developed this claim by explaining how the admission of Mr. Bankhead's testimony prejudiced him. In addition, Appellant has failed to develop this claim with any discussion of Rule 4019 as applied to the facts of this case or any citation to pertinent authority as required by Rule of Appellate Procedure 2119(a) and our case law. *See Karn*, 912 A.2d at 336 (Pa. Super. 2006). Because Appellant failed to provide an appropriately developed argument, he has waived this claim.

Appellant next avers that the trial court erred by improperly admitting exhibits and considering evidence regarding the April 13, 2018 deed transferring 3843 Hamilton Street to Ms. Hennigan. Appellant's Brief at 64-66.

---

[16] Rule 4019 provides, in relevant part, that "[a] witness whose identity has not been revealed as provided in this chapter shall not be permitted to testify on behalf of the defaulting party at the trial of the action." Pa.R.C.P. 4019(i).

To preserve an issue for appellate review, counsel must place a timely, specific objection on the record. *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 45 (Pa. 2011). Issues that are not preserved by a specific objection in the lower court are waived. *Straub v. Cherne Indus.*, 880 A.2d 561, 617-18 (Pa. 2005); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Our review of the Notes of Testimony indicates that Appellant did not place a timely and specific objection on the record to the admission of these pieces of evidence. Accordingly, these issues are waived.

In his final issue, Appellant complains that the trial court's damages award of $50,000 was inadequate. Appellant's Brief at 66-69.

The determination of damages in a non-jury trial is within the province of the trial court as fact-finder and will not be disturbed on appeal absent a showing that the amount awarded resulted from prejudice, partiality or corruption, or that the award does not bear a reasonable resemblance to the evidence of damages at trial. *Witherspoon v. McDowell-Wright*, 241 A.3d 1182, 1187 (Pa. Super. 2020); *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 328 (Pa. Super. 2015).

Here, Appellant sought $8,000 in compensation for the cost of repairs to each of his second- and third-floor roofs and $2,442.96 for "miscellaneous

repairs and cleaning."[17]  Trial Memorandum, 11/16/20, at 10; *see also* N.T. at 138 (explaining that Appellant sought $16,000 total for the second- and third-floor roof repairs).  Appellant also sought a "fair and just award" of compensatory and punitive damages[18] for Mr. Colding's defamatory conduct and asserted that "[t]here's no way to quantify" the amount.[19]  N.T. at 27.

The trial court found that Appellant established that Mr. Colding was responsible for damage to Appellant's third-floor roof, for which Appellant sought damages of $8,000.  FFCL at 2.  The court also found that Mr. Colding was responsible for feces and urine "dumps" on Appellant's property, for which Appellant sought damages of $2,442.96.  *Id.*  The court found that Appellant did not establish that Mr. Colding was responsible for any damage to Appellant's second-floor roof.  *Id.*  The court, therefore assessed damages of $10,442.96 for Appellant's property damage claims.

The court also found in favor of Appellant on his defamation claim.  *Id.* at 3.  It, thus, awarded the balance of the $50,000 in damages—nearly $40,000—in non-economic damages to compensate Appellant for Mr. Colding's defamatory conduct.

_____

[17] In the Amended Complaint, Appellant sought "an amount not in excess of $50,000.00, together with reasonable counsel fees and costs" for each of his tort claims.  Amended Complaint, 8/15/18, at 3-5 (unpaginated).

[18] Appellant did not request separate awards for compensatory and punitive damages.  Trial Memorandum at 10.

[19] In his Trial Memorandum, Appellant "quantified" the amount sought as $100,000 in compensatory and punitive damages for Mr. Colding's defamatory conduct.  Trial Memorandum at 10.

In support of his claim that the trial court's compensatory damages award was inadequate, Appellant restates the evidence placed on the record at trial regarding Mr. Colding's conduct. Appellant's Brief at 66-67. The trial court's FFCL reflects that the court considered this evidence when reaching its verdict and calculating its award of damages. FFCL at 2. Following our review, we conclude that the award of almost $40,000 is reasonable in light of the evidence presented at trial. Accordingly, Appellant is not entitled to relief on his claim that this amount is inadequate.

With respect to his claim that the court's award of damages on his property damage claim is inadequate, Appellant argues that the trial court incorrectly found that Appellant did not establish that Mr. Colding damaged Appellant's second-floor roof. Appellant's Brief at 68-69. The trial court's finding that Appellant's evidence did not establish that Mr. Colding caused the damage to the second-floor roof is supported by the record. Thus, the court did not err in not awarding damages for the cost of repairs to that roof.

Appellant also claims he is entitled to reasonable counsel fees "either as a form of punitive damages against [Mr.] Colding due to his outrageous conduct or as an element of damages under Section 5107 of the PUVTA." **Id.** at 69-70. Neither of these claims garners relief.

First, Appellant has not developed his claim that he is entitled to counsel fees as a form of punitive damages with citation to or discussion of any controlling case law supporting this assertion as required by Pa.R.A.P. 2119. Accordingly, this undeveloped claim is waived. In addition, Appellant's claim

that he is entitled to counsel fees under the PUVTA fails because the trial court concluded that Appellant was not entitled to relief under the PUVTA and dismissed Appellant's PUVTA-based claims. Having presented no cognizable argument refuting the trial court's dismissal of his PUVTA-claims, we conclude that Appellant is not entitled to statutory counsel fees.

In sum, Appellant has not raised any issues that entitle him to relief. Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/14/2022